RICHARD C. HARRIS, APPELLANT, V. CENTRAL POWER COMPANY, APPELLEE.

FILED DECEMBER 30, 1922. No. 22173.

1. **Electricity:** TELEPHONE COMPANY: USE OF STREETS: CARE REQUIRED. Where an electric company secures telephone poles, which it has a right to place in the streets, with guy wires, it is required to use reasonable care to so erect and maintain such wires as not to endanger public travel or the safety of individuals, having in view the probable use of the highway by the public.

2. ———: ———: ———. Where an ordinance requires telephone poles to be placed within or adjacent to the curb line of the street, the fact that the curb line and property line of an alley are the same, and that to place the poles adjacent to the curb line would cause cross-arms, ordinarily used on telephone poles, to extend over private property, is no justification for the company to set its poles out in the paving two and one-half feet from the curb line, for the company may either construct its cross-arms to extend from one side of the pole only, or procure from private owners 'the right or permission for the overhang of cross-arms over their property.

3. ———: ———: ———: EVIDENCE. The testimony of experts on electric pole and wire construction, that the poles and wires in the instant case were erected according to the method generally approved by electrical engineers, does not conclude the question of whether or not the placing of the guy wires in the alley, at the place and under the conditions in question, was a dangerous obstruction to public travel, negligently maintained, that being a matter within the range of common knowledge.

4. ———: ———: ———: NEGLIGENCE: QUESTION FOR JURY. Where a company anchored an uncovered guy wire, which supported a terminal pole carrying five wires, out in the paving of a 20-foot alley, and two and one-half feet from the outer edge of such paving, *held*, that the question of whether or not the company was negligent in so doing was for the jury.

APPEAL from the district court for Buffalo county: BRUNO O. HOSTETLER, JUDGE. *Reversed.*

*Sinclair & McDermott,* for appellant.

Pratt & Hamer, contra.

Heard before MORRISSEY, C. J., ROSE, DAY and FLANS-BURG, JJ., SHEPHERD, District Judge.

FLANSBURG, J.

This was an action to recover from the defendant Central Power Company damages arising from personal injuries resulting to the plaintiff from collision with a guy wire maintained by the defendant company in a public alley in the city of Kearney. The trial court found that there was no showing of negligence on the part of the defendant company and directed a verdict in its favor. From a judgment on this verdict the plaintiff appeals.

The only question presented is whether or not the evidence, construed most favorably to the plaintiff, is sufficient to have presented an issue for the jury on the question of whether or not the guy wire, as located, furnished an unnecessarily dangerous obstruction to public travel; in other words, whether or not the plaintiff had proved any negligence on the part of the company in maintaining the wire at the place and under the conditions shown.

The alley runs north and south and is 20 feet wide. Entering the alley from the south there are business buildings on the right-hand side, many of them having doors opening upon the alley. On the left-hand side is a lumber yard and a fence running along it next to the alley. The fence is a foot from the edge of the paving. A row of telephone poles extends along the left-hand side of the alley. They are placed in the paving. From the center of these poles it is two feet and eight or ten inches to the outside edge of the paving. One of these poles is about 100 feet north from the south entrance of the paving, and this pole has attached to it the guy wire in question, which extends south and is anchored in the paving two and one-half feet from the left-hand edge thereof. The place where it is anchored is about 60 feet south from the pole, to which it is at-

tached, and perhaps some 40 or 50 feet north of the
south entrance to the alley. The plaintiff was engaged
in running a bakery, and the building in which he con-
ducted his business was located so that it had a rear
entrance upon this alley. The accident happened on
Sunday. The regular delivery boy was not on duty,
and the plaintiff had gone to the train in a Ford de-
livery wagon to get some merchandise, and, upon his
return, entered the alley from the south. He had made
the trip through the alley only a few times before.
There is testimony to show that at this time, when he
entered the alley, he was going somewhere from five to
eight miles an hour. As he started up the alley a child
came running from a building on the right-hand side
and across the path of the plaintiff's car. Plaintiff tes-
tified that the child was about five feet in front of him,
and that he quickly turned the car to the left, toward
the guy wire, which was then 12 feet in front of him,
but which he could not at that time see, so as to pass
around the child, and before he had opportunity to turn
the car back to the right again the hub of the left-hand
wheel ran upon the wire, and the delivery wagon was
tilted up and turned over, thereby causing the personal
injuries to the plaintiff upon which this suit is based.

By the ordinances of the city, authorizing companies
to place their poles in the streets and alleys of the city,
it was provided that such poles and wire shall be so
erected "as to in no manner interfere with the public
use of the streets, alleys and sidewalks of said city,"
and the franchise ordinance, under which the defendant
company was authorized to maintain its poles and wires
in the highways, provided that all poles should be placed
"within or adjacent to the curb line of the street and
in such manner as to not unnecessarily impede public
travel, or unnecessarily interfere with the rights of ad-
jacent owners or occupants."

The defendant introduced testimony of men experi-
enced in telephone construction, who testified, from their

expert knowledge on the subject, that the guy wire in question was necessary to support the pole to which it was attached, since the pole was the terminus of five electric wires, and that a guy wire was necessary to relieve the strain of the pull of these wires upon the pole. They testified that the cross-arm on these poles was some six feet in length, and that it was necessary to place the pole out in the paving of the alley at a distance from the property line of the alley so that the cross-arm would not encroach upon or extend over private property. They testified, further, that it was necessary that the guy wire be in the same plane, or in a direct line with the electric wires attached to the poles, and, as the poles were some two and a half feet from the edge of the property line of the alley, that the guy wire must also be placed at the same distance from the alley line. Their testimony was to the effect that sometimes, where there is heavy traffic, a short pole is set so as to lean in the direction of and follow the guy wire, for the purpose of protecting the wire, and that also, in other instances, the guy wire is housed or boxed so as to protect people from coming in contact with it and receiving electric shock. Though it may be there is no testimony to refute the fact that the telephone poles and wires were constructed according to the method generally approved by electrical engineers, still that does not conclude the question as to whether or not the placing of the guy wire in the alley, at the place and under the conditions in question, was negligence so far as it might unnecessarily interfere with or be an obstruction to the use of the alley by the public. The question of whether or not a wire so located interfered with the public use of the alley, or was dangerous to public travel thereon, or whether it was negligence on the part of the company to maintain the wire, as was done in this case, is a matter within the range of common knowledge and not a matter to be determined by experts alone.

It seems to be argued that the necessity of placing the

poles away from the property line and out in the paved portion of the alley is a complete justification for the location of the guy wire.

The franchise ordinance contemplated that poles should be placed along the curb line. Where the curb line and the property line of the alley 'were one, it does not follow that the company had the right to place its poles and guy wires out in the paving at whatever convenient distance it found necessary in order that the cross-arms which it should use, in such lengths as it should judge proper, should not extend over private property. There was nothing to compel the company to so place its cross-arms as to extend over private property, even though it should place its poles at the edge of the alley. The engineers did not testify that the arms could not be made to extend from one side of the pole alone, a manner of construction not uncommon, though they did testify that to attach the five wires directly to the poles, one above the other, without the use of arms or brackets, would make it dangerous to men on the poles when working with the electric wires. There were no buildings to interfere with the overhang of cross-arms on these poles, nor would the encroachment actually inter- fere with the use of adjacent property by the owners. The right to such encroachment the company had the ability to procure, if it should have found it necessary.

It is manifest that the location of a pole in the paved portions of a street, being so easily seen, would not create the same danger to people using the street as would a bare wire located in the same place, for a wire is not, under all circumstances, an obvious obstruction. The placing of wires in the street must be done with reference to the possible use of the street by the people traveling thereon, and the company maintaining guy wires in the street must use ordinary care to see that no unnecessary danger is created thereby. In a number of cases it has been held that the placing of guy wires within the limits of the street, even though the wires

are placed outside of the paving or sidewalks, and at a place where people are not accustomed to travel, may be negligence on the part of the company, where the wires are not guarded or casings placed around them so as to make the obstruction obvious to view; and, where a person using the street in the night-time, and under circumstances where he could not see the wire, was injured, the company has been held liable. *Canyon Power Co. v. Gober,* 192 S. W. (Tex. Civ. App.) 802; *Cumberland Telephone & Telegraph Co. v. Lawrence,* 271 Fed. 89; *Nessen v. City of New Orleans,* 134 La. 455; *Lafayette Telephone Co. v. Cunningham,* 63 Ind. App. 136; *Raines v. East Tennessee Telephone Co.,* 150 Ky. 670; *Poumeroule v. Postal Telegraph Cable Co.,* 167 Mo. App. 533.

In the instant case the guy wire was located in the traveled portion of the street. The plaintiff was required to act quickly in an emergency. What, to a quick glance, might appear to be an open way upon a paving laid out and intended for travel, was, in fact, a path dangerously obstructed by a slanting wire. The paving of the alley presented to him a place 20 feet wide in which to operate his car. He was only some 12 feet from the wire as he attempted to turn out for the child. He testified that he could not see the wire, and the companion who was in the car with him testified that he did not see the wire and did not know what had caused the car to turn over until after the accident had happened. The plaintiff did not remember that he attempted to stop the car. Not having seen the wire, he would not have been called upon to do so. Had the wire been so open to view as to present a dangerous obstruction at a glance, the plaintiff, if traveling at the rate of speed testified to, should have been able to stop. We cannot say, under these circumstances, that as a matter of law the defendant was guilty of no negligence in maintaining the wire anchored in the paving and over two feet from the edge thereof, in such close proximity to where it knew vehicles must pass, and

without, at least, some guard or boxing which would at once have made apparent the existence of the obstruction.

A case somewhat similar to the one here is that of *Louisville Home Telephone Co. v. Gasper*, 123 Ky. 128, 9 L. R. A. n. s. 548, where a truck in the day-time ran onto an unguarded guy wire, placed in an alley 18 inches from the side fence, and it was held that the question of whether or not the maintenance of the unguarded wire, an obstruction not easily discernible, was negligence on the part of the defendant was a question for the jury. See, also, *Unglaub v. Farmers Mutual Telephone Co.*, 39 S. Dak. 355.

We believe that, under the facts as above related, the question of whether or not there was negligence on the part of the company in maintaining an uncovered guy wire, anchored in the paved way of the alley and two and one-half feet from the outside edge of the paving, cannot be determined as a matter of law, but was an issue for determination by the jury.

The judgment of the lower court is therefore reversed and the cause remanded for further proceedings.

REVERSED.