Hillsborough, }
 Oct. 5, 1926. }

### WILBUR E. OLENA, *Adm'r, v.* STANDARD OIL COMPANY.

When in an action for. negligent injury there is evidence that the injury was caused by the negligence of the defendant, the introduction by the plaintiff of other evidence tending to raise a probability in the defendant's favor or to cast a conjectural doubt upon the evidence upon which the plaintiff relies does not warrant a nonsuit or a directed verdict. It is for the jury to weigh the evidence and balance the probabilities on each side.

Liability for injury caused by the explosion of oil below the legal standard of quality is based upon statute, and is absolute. It is not necessary for the plaintiff to prove that the explosion was due to the inferior quality of the oil.

If it is the general rule that a manufacturer or seller of a defective article is not liable to one acquiring it from the buyer, the rule does not apply when there is a statute imposing such liability.

An instruction to the jury that if the decedent was injured by the explosion of oil while she was pouring it upon the fire it is for them to say whether she was careless, is erroneous. Such an act is below the standard of care of the average man, and cannot fairly be called the exercise of due care.

The instructions given in *Ahearn v. Mann*, 60 N. H. 472, set forth the extreme limit of a juror's duty to agree with the others of the panel, and the doctrine of that case is not to be given extension.

A prejudicial statement in argument, amounting to testimony by. counsel upon a point on which no evidence was introduced, vitiates the verdict although counsel withdrew the statement, there being no finding by the court that no harm was done by it.

CASE, based upon P. S., c. 126, s. 26 (P. L., c. 163, ss. 25, 26), for causing death. Trial by jury and verdict for plaintiff. The decedent died from burns claimed to be received in an explosion of a mixture of kerosene and gasolene sold as illuminating oil and igniting at a temperature below 120 degrees Fahrenheit. Transferred by *Branch,* C. J., on exceptions to the denial of motions for a nonsuit

and directed verdict, to the allowance of argument, and to the charge. The opinion states the material facts.

*Wason & Moran, Doyle & Doyle* and *John R. Spring* (*Mr. Spring* orally), for the plaintiff.

*Hamblett & Hamblett, Robert W. Upton* and *Lucier & Lucier* (*Mr. Upton* orally), for the defendant.

ALLEN, J. The motions for a nonsuit and directed verdict were properly denied. As will appear later, the plaintiff was entitled to a verdict if exploding oil was supplied by the defendant when below the statutory standard and the explosion caused the decedent's death, barring her fault.

A witness who was present at the accident testified that an explosion of the contents of an oil can preceded flames which enveloped and fatally burned the decedent. There was evidence that the can contained oil bought at a store. The storekeeper testified to having a 300-gallon tank for storing kerosene and to the purchase of 1350 gallons during the eleven months preceding the accident. Of this quantity the defendant furnished all but 100 gallons bought about six months before the accident, the subsequent deliveries by the defendant amounting to 500 gallons. It was therefore proper to infer that the decedent died as the result of an explosion of oil which was supplied by the defendant and which when thus supplied was of the same standard as when sold by the storekeeper.

It only remains to consider if there was evidence that the oil when thus supplied was under the statutory ban. According to the testimony the oil can had been cleaned before the purchase was made from the storekeeper, and also two lamps before they were filled with some of the oil. The accident occurred a few days after the oil was purchased. After the accident the oil remaining in each of the lamps was transferred to a separate bottle, and the contents of each bottle were later separately analyzed at times about a month apart. Both analyses showed a sublegal condition, but with a difference of about thirteen degrees in the temperature for flashing.

It is claimed that the difference conclusively established that the oil analyzed was not the same as that supplied by the defendant, or at least made it necessarily conjectural to find that the oil when thus supplied was below the standard.

Reasonable explanation of the difference on grounds favorable to

the plaintiff warranted the rejection of other explanations. The difference in time between the analyses, the fact that the experts acted separately and each in his own laboratory, and the circumstances concerning the use of the lamps and bottles as containers may be suggested as reasonable explanations for the plaintiff. There is no common knowledge that oil may not flash at varying temperatures under such varying occasions and conditions as were shown to have existed, and the argument that the oil analyzed could not be the same as that supplied by the defendant fails as a legal demonstration. Since it cannot be said that the difference necessarily showed either that the oil did not come from the defendant or that it was not below standard when and if it did so come, it cannot be said to overcome the evidence that it did thus come and was thus below standard.

The plaintiff had a case to submit to the jury unless, and only unless, the difference was a conclusive disproof of the truth of the evidence supporting the case. As the difference at best made only a probability to meet such evidence, it was for the jury to say how far it affected the evidence. They were entitled to believe the evidence unless the difference showed it impossible of reasonable belief, and this it did not do.

The position that it was conjectural to find that the oil analyzed came from the defendant and was of the same standard disregards the situation as to proof. The plaintiff, having furnished evidence that the oil analyzed did so come and was below the standard when it thus came, had a case for the jury's consideration. If it is conceded that the difference was not satisfactorily accounted for and that explanation of it was conjectural, the difference was merely an argument against the adoption of the evidence without making the evidence necessarily conjectural, and it might be regarded as an indecisive circumstance.

On the motions the burden does not rest on the plaintiff to eliminate all causes favorable to the defendant, but is on the defendant to eliminate those favorable to the plaintiff. The plaintiff's evidence is not made conjectural by casting doubt on it. If the difference in the flashing temperature of the two specimens, considered by itself, would make the source of the oil conjectural, the plaintiff's case here does not depend upon such conjecture, but is attacked by it. The conjectural evidence is relied on, not to support, but to destroy the plaintiff's case as already established by other evidence.

Whether the difference made a probability in the defendant's favor

or whether it cast a conjectural doubt on the plaintiff's other evidence, it was for the jury to weigh the evidence and balance the probabilities on each side.

The evidence of the difference came from the plaintiff's witnesses, but the situation is the same as though it were furnished by the defendant, and upon such evidence "A nonsuit is not ordered . . . 'for the plaintiff is not obliged to yield to the evidence, and is entitled to have it weighed by the jury.' *Pillsbury* v. *Pillsbury*, 20 N. H. 90, 97." *Hill* v. *Carr*, 78 N. H. 458, 462.

The court charged the jury that if the exploding oil came from the defendant and was below the legal standard, the defendant was liable unless contributory negligence were found. To this instruction the defendant excepted on the ground that it did not require a less than standard condition of the oil to be a legal cause of the explosion.

The question is one of construction of the statute on which the action was brought, and the principle of legal cause is irrelevant if the statute dispenses with its application. Oil exploded, but aside from contributory negligence, what caused the explosion if the oil was below the standard is not material to liability if the statute so declares.

The statute provides that one selling or keeping for sale illuminating oil mixed with naphtha or below the specified standard shall be criminally liable, and also "shall be liable for all damage occasioned to any person by the explosion of such oil. . . ." It is a police regulation designed to promote protection from hidden and serious dangers. The purpose to minimize danger is further shown by provisions on the subject relating to inspection and licenses, and the legislative intent to do all that was practical in making oil safe to use is not doubtful. "The object of these provisions is to protect the public from the dangers arising from the use of oil that will evaporate and ignite at a low temperature." *Hanson* v. *Company*, 67 N. H. 201, 202.

As the statute reads, it is explicit in creating liability for damage to one hurt from the explosion or ignition of such oil. The character of the oil is made the test of liability, and not the results of its character. There is liability for the consequences of an explosion of the oil below the standard, and not merely of an explosion due to the oil being below standard. It is not because of poor oil causing an explosion but because such oil does explode, that liability is determined.

If a construction for the limitation of liability as claimed were adopted and proof required that an explosion or ignition of oil was due to its defective character, it would tend to lessen or defeat the security designed. Such proof would often if not usually be unobtainable, and it would be doubtful to say what would have happened in the same situation had the character of the oil been good. Liability for the explosion of oil below the standard has been imposed for the purpose of preventing the sale of such oil. That the same result would have occurred if the oil had been of legal standard is therefore no defence.

Cases where liability arises from a violation of a statute because of the wrong done in such violation are to be distinguished from those where the liability is imposed by the express terms of the statute. In the former the violation must cause the damage, while in the latter it depends upon the language used.

In *Wentworth* v. *Jefferson*, 60 N. H. 158, a person traveling in violation of the Sunday law was allowed to recover for damage from a defective highway. The illegal conduct did not contribute to the accident. Although at the time disobeying the law, the plaintiff as a traveler was lawfully on the highway, and the purpose of the highway statute is to protect travelers regardless of their mission of travel.

In *Lindell* v. *Stone*, 77 N. H. 582, a minor below the age of employment was held not entitled to recover for injuries sustained in employment merely because of the illegality of the employment. The statute there did not in terms impose such a liability. As stated in the opinion: "No causal connection is established in the absence of statutory language imposing a duty upon the defendant with reference to the plaintiff's physical safety. . . . Cases arising under statutes which unqualifiedly prohibit the employment of minors below a certain age in manufacturing establishments, and declare in effect that on account of the danger to life and limb of working in such places it is negligent for one to employ minors of the designated age to do such work are not in point."

In Massachusetts a statute relating to illuminating oils and similar to the one here under consideration has been construed in harmony with the view here taken. *Wellington* v. *Company*, 104 Mass. 64, 70; *Hourigan* v. *Newell*, 110 Mass. 470, 473; *Gately* v. *Taylor*, 211 Mass. 60.

It is further urged that the statute does not apply to cases where there is no direct relation between the parties and that when the oil

was delivered to the storekeeper, a sale and delivery by him terminated any liability of the defendant. No such narrow construction of the statute is to be found. The statute makes no such limitation in terms, and there is no language in it to indicate the intervening possession of a third party as affecting liability. The statute in terms makes it unlawful to sell oil below the standard, and one selling such oil is made liable to any person hurt by its explosion or ignition.

Assuming that it may be the general rule that the manufacturer or seller of a defective article is not liable to one acquiring it from the buyer and assuming that the rule may apply in cases where the article is inherently dangerous but there is no statute on the subject (17 A. L. R. 683; 29 A. L. R. 993), the authorities are in general accord in holding cases where there is a statute to be uncontrolled by such a rule. *Company v. Deselms*, 212 U. S. 159; *Wellington v. Company, supra; Stone v. Company*, 225 Mich. 344; *Meshbesher v. Company*, 107 Minn. 104; *Pizzo v. Wiemann*, 149 Wis. 235; 25 C. J. 191.

The court in his charge stated that if the oil can exploded while standing on the floor, it was "very difficult to see any ground" for finding the decedent careless. Construed in connection with the context which neither qualified nor limited its force and effect, this statement fairly amounted to an instruction which the jurors would properly consider as their duty to follow. It is therefore unnecessary to consider its effect on the verdict as an expression of opinion which the jury were at liberty to disregard. That it is careful to have a can with an open snout and containing kerosene standing on the floor within about two feet of a stove in which there is a hot fire and on which potatoes are being fried in an open dish containing a frying substance and in a way tending to produce sizzling is not a matter of common knowledge so as to bind the ordinary mind about it, and the jury were entitled to find the decedent's death attributable in part to her negligence under that situation. The statement was therefore objectionable.

The argument that the defendant waived any claim of the decedent's fault under the plaintiff's theory of the circumstances of the explosion is without support. The defendant's theory of a different set of circumstances implied no admission of liability if the facts were as the plaintiff claimed. The plea of the general issue was a general denial of liability, and disagreement as to the facts was no acknowledgment binding the defendant. It did not admit in

law or fact that the decedent was at fault only upon its claim of facts. Nor did failure at the trial to argue the issue of her fault on the plaintiff's theory of the facts amount to such admission as matter of law.

The jury were also instructed that if the oil exploded while the decedent was pouring it on the fire, it was for them to say if such conduct was careless. As a matter of general understanding there is danger of explosion in doing such a thing, and ordinary prudence does not countenance it. It is below the standard of care the average man takes, and cannot fairly be called the exercise of due care. If the decedent was burned by an explosion under such conditions, everyone in the exercise of fair judgment would call her in fault. The evidence of an expert that such an act might be done without producing an explosion does not tend to disprove the common knowledge that it is not an act of safety. An instruction that if the explosion took place while the decedent was pouring oil on the fire in the stove, recovery was barred, should have been given. *Riggs* v. *Company*, 130 Fed. 199, 204; *McLawson* v. *Company*, 198 Mich. 222, 231.

Before the verdict was returned the court instructed the jury on their duty to agree. Exception was taken to the instructions and it is particularly urged that they were unfair as implying that jurors in a minority should surrender their views to the majority and that the verdict need not represent the views of every juror. Whether the instructions gave such an implication need not be considered, in view of the requirement of a new trial on other grounds and the unlikelihood of the same question arising at the new trial. It may be said, however, that the instructions appearing in *Ahearn* v. *Mann*, 60 N. H. 472, set forth the extreme limit of a juror's duty to agree with the others of the panel, and that the doctrine of the case is not to be given extension.

In argument plaintiff's counsel in effect urged the jury to find that if any of them knew him, the plaintiff, who testified, was a truthful man from their experience and knowledge of him. While the argument was withdrawn, there was no finding by the court that it was disregarded. The argument amounted to an assertion by counsel that the witness had a good name for being an honest man. It is like the argument in which the bad reputation of certain witnesses was asserted and which was held improper in *Perkins* v. *Burley*, 64 N. H. 524.

The prejudicial character of the argument vitiates the verdict

unless it appears that the prejudice was removed. Counsel's withdrawal does not conclusively show such removal, and it cannot be said here that harm was not done. As stated in *Wilcomb* v. *Dustin*, 82 N. H. 180, "The error must be cured, and the ascertainment of a cure is peculiarly a question of fact for the justice who presided at the trial." No such finding being made, the exception is sustained.

Another exception to argument relates to an erroneous assertion that two witnesses gave direct testimony on a point of material import. The assertion was emphasized by counsel's statement when objection was made that he would take a chance on the argument, and there was no instruction to disregard the assertion and any argument based on it if the testimony failed to support the assertion. While what was claimed as thus testified to was a legitimate inference from other testimony, the assertion was presumably harmful. Direct testimony may be, and usually is, of more weight upon an issue than inferences which may be drawn from the testimony. The assertion here was of the testimony of the plaintiff's own experts, and as said in *Cote* v. *Michou*, 80 N. H. 41, at p. 42, "The unwarranted remarks were especially potent to persuade the jury against the plaintiff because they were presented to them as the testimony of the plaintiff's medical expert." That the assertion there related to the testimony of an adverse witness is a distinction of no importance.

*New trial.*

BRANCH, J., did not sit: the others concurred.