[No. 29772. Department One. May 31, 1946.]

ERIC J. SWANSON *et al.*, *Respondents*, v. THOMAS GILPIN, *Appellant*, LEO HARDY *et al.*, *Defendants*.[1]

[1]Reported in 169 P. (2d) 356.

*John D. MacGillivray*, for appellant.

*Welts & Welts*, for respondents.

MILLARD, J.—The course of Swalwell road, which is two miles long and approximately twenty feet wide, is northerly and southerly. On August 7, 1940, Snohomish county was resurfacing that road with oiled gravel. A windrow of loose gravel four feet wide at the base and rising to an apex of two feet was eighteen to twenty-four inches west of the center of the highway; that is, in addition to the east half, or ten feet of highway, there was an additional space of eighteen to twenty-four inches west of the center of the highway open for travel. This road was closed to traffic except for ingress and egress of persons residing along the road. To direct and regulate movement of the seven road graders and the automobile traffic permitted on that road, one flagman was stationed at the north end of the road, one was placed at the south end of the road, and a third flagman was stationed in the center of the road directly in front of the residence of Leo Hardy and wife.

At nine a. m., August 7, 1940, Thomas Gilpin, a county commissioner for Snohomish county, who had been called to investigate the rupture of a water line, drove in onto the Swalwell road from the south in a county automobile and drove northerly on the east half of the road. On arriving at the Hardy residence, he was stopped by the flagman and directed to drive his car off of the road. He parked his vehicle at an angle facing north immediately south of the Hardy residence on the shoulder and east edge of the road, which left seven or eight feet of clearance for travel between his car and the gravel ridge or windrow. On or about the time Gilpin parked the county automobile, Leo Hardy drove in from the north, backed into the entrance to his home on the east side of the highway, and parked

his Ford sedan, which faced directly west, five or six feet north of the front end of the county car and fifteen feet from the east edge of the highway.

Within twenty to thirty minutes after the parking of the Hardy car, Mrs. Hardy emerged from her home with the intention of driving her car out to the highway and proceeding south to Everett. She placed her automobile in low gear, proceeded straight ahead at three to five miles an hour, passed the north end of the county car, and continued until the front wheels of her car entered into the ridge or gravel windrow on the west half of the road. The north end of the gravel windrow was opposite the parked car and extended south.

Ellen Swanson, who was on the west side of the road opposite the parked county automobile, started with her son across the roadway to the east. In reaching a point opposite the parked county car, Mrs. Swanson would have to continue in a southerly direction on the east side of the road, walking along the west side of the car to the rear thereof; thence behind the parked car to the east edge of the road; thence south. In doing this, the parked car entirely hid Mrs. Swanson from the view of the operator of the Hardy car driving out onto the road. As stated before, Mrs. Swanson walked along the west side of the parked county car, thence behind it to the east side of the road, thence south. When on the east edge of the road and ten feet south of the rear of the Gilpin car, which was heading north, Mrs. Swanson was struck by the automobile operated by Mrs. Hardy.

When Mrs. Hardy entered into the gravel windrow on the west half of the roadway, she started to turn sharply to the left or south; and as she did this, the rear end of her car slid to the left, the left rear fender of her car scraping the bumper of the parked county car. Mrs. Hardy accelerated the speed of her car and continued to turn to the left and south. In attempting to pass through the opening west of the parked car and east of the gravel windrow, the right front wheel of Mrs. Hardy's car struck the loose gravel. This was at the point opposite the back end of the

Gilpin car, where the angle at which Gilpin parked made the opening the narrowest. It would appear that she started from a position approximately six feet in front of the parked county car at right angles to it and back a car's length.

As she proceeded forward, she made a swinging left turn, utilizing the six feet space north and south between her and the county car in turning onto the road to go south. It would be difficult, if not impossible, to see how narrow the passageway was at the rear of Gilpin's car until, in turning, the driver's seat in the Hardy car was approximately flush with the west edge of Gilpin's car, which would then no longer obstruct the view of the operator of the Hardy car. At that time, the front of the Hardy car would be less than a car length from the rear of the Gilpin car. Mrs. Hardy could not see Mrs. Swanson, who was ten feet behind the Gilpin car at the east side of the road; as the Gilpin car, along the west side of which Mrs. Hardy was proceeding, hid Mrs. Swanson from Mrs. Hardy's view until Mrs. Hardy arrived on the east side of the highway south of the Gilpin car. Mrs. Hardy applied her brakes, but she was unable to avert striking Mrs. Swanson.

An action was instituted by the marital community composed of Mr. and Mrs. Swanson against Thomas Gilpin and the marital community of Leo Hardy and wife to recover for the personal injuries sustained by plaintiff wife in the accident described.

The alleged negligence of defendant Gilpin was in parking the county car partially on the traveled portion of the highway in violation of the statute (Rem. Rev. Stat., Vol. 7A, § 6360-110 [P.P.C. § 295-71]), thereby obstructing traffic in so narrowing the usable portion of the roadway as to render it hazardous to one driving or attempting to drive automobiles thereon. Plaintiffs allege that Mrs. Hardy was negligent in not having her automobile under reasonable and proper control and in attempting to pass through the narrow opening between the portion of the roadway under repair and the automobile of defendant Gilpin at a rate of

speed which was unreasonable under the then existing circumstances.

Trial of the cause to the court sitting with a jury resulted in a verdict in favor of the plaintiffs and against the defendants. Motions for judgment notwithstanding the verdict and for new trial were overruled, and from a judgment entered on the verdict Thomas Gilpin appealed.

It is conceded by appellant Gilpin that, in parking partially on the traveled portion of the highway, he violated the statute (Rem. Rev. Stat., Vol. 7A, § 6360-110), hence he was guilty of negligence *per se*; however, it is argued that that negligence was not a proximate cause of the accident out of which this action arose. It is urged that the illegal parking of the Gilpin automobile created a passive and obvious condition which was, at best, a circumstance or remote cause; and that the subsequent, intervening negligence of Ethel Hardy was the direct, efficient, and proximate cause of the injury sustained by respondent wife.

Counsel for respondents insist that the negligent acts of appellant Gilpin and of defendants Hardy were contributing causes and proximate factors in the happening of the accident and impose liability upon both appellant and defendants, in view of the fact, found by the jury, that Mrs. Hardy did not become apprised of the danger until her own negligence, added to that of the existing perilous condition created by Gilpin, had made the accident inevitable.

It is unnecessary to review all of the authorities cited. The rule applicable to the facts in the case at bar reads as follows:

"NEGLIGENCE OF INTERVENING ACTS. The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

 (a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

 (b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

(c) the intervening act is a normal response to a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent."

Restatement of the Law, Torts, 1196-7, § 447.

At p. 707, § 58, vol. 38 Am. Jur., is the statement that:

"If the consequences of a negligent act were foreseen by the actor, for the purposes of determining proximate cause, it does not matter whether those consequences were immediate or remote. . . . Even remote negligence may be actionable where injurious consequences reasonably might have been foreseen by the wrongdoer." 38 Am. Jur. 707, § 58.

"Those consequences are deemed immediate and proximate which a person of average competence, experience, knowledge, and sagacity, being in the situation of the person whose conduct is in question, and having the same opportunities of observation, reasonably might be expected to foresee as likely to follow on such conduct." 38 Am. Jur. 710, § 59.

"The rule that the causal connection between a person's negligence and an injury is broken by the intervention of a new, independent, and efficient intervening cause so that the negligence is not actionable, is subject to the qualification that if an intervening cause was foreseen or reasonably might have been foreseen by the wrongdoer, his negligence may be considered the proximate cause of an injury, and he may be held liable, notwithstanding the intervening cause. The intervention of independent intervening causes will not break causal connection if the intervention of such forces was itself probable or foreseeable." 38 Am. Jur. 726, § 70.

In *Eckerson v. Ford's Prairie School Dist. No. 11,* 3 Wn. (2d) 475, 101 P. (2d) 345, a school child slipped when her left foot came into contact with the front edge of a concrete apron forming the first step of a concrete stairway of a school building. The first step was three and one-half inches above the level of the adjacent ground, and the school district knew for a long time that that dangerous condition had existed. As the school child reached the bottom of the steps she threw her hands up and forward to protect herself, and at the same time a boy inside the furnace room suddenly closed the door in front of her. The school girl's hand struck against and broke one of the glass

panels, as a result of which she sustained serious injuries to her right arm. We held that the slight rise in the platform was negligently maintained by the school district, which was not absolved from liability by the fact that the negligent act of another pupil concurred to produce the result. We said:

"In the first place, it was within the province of the jury to determine whether the act of the boy was a superseding cause, or simply a concurring one. The jury may well have found, under the evidence, as it apparently did, that the injury was traceable to the negligent condition of the top step, and that such condition was the proximate cause without which the injury would not have occurred; further, that while the negligent act of the boy was also a proximate cause, it merely combined or concurred with the continued effect of appellant's negligence to produce the result, but did not supersede it. . . .

"The other ground upon which appellant's contention may be disposed of, and the point on which it mainly relies, presents the question whether or not the act of the boy in suddenly shutting the door was foreseeable by appellant.

"The fundamental basis of the law of negligence is the ability of the actor reasonably to foresee the consequences of his misconduct. If the particular injury was reasonably expectable at the time of the misconduct, then the act of negligence will be regarded as the legal, or proximate, cause of the injury sustained.

"The rule, in the type of situation which we are now considering, is thus aptly stated in Restatement of the Law of Torts, 1202, § 449:

" 'If the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby.'

"See, also, Harper on Torts, §§ 111, 119, 122, 123, 124. That rule has been recognized and followed by this court. *Akin v. Bradley Eng. & Mach. Co.,* 48 Wash. 97, 92 Pac. 903, 14 L. R. A. 586; *Hellan v. Supply Laundry Co.,* 94 Wash. 683, 163 Pac. 9. See, also, *Bracy v. Lund,* 197 Wash. 188, 84 P. (2d) 670, and cases therein cited.

"The question, then, is whether or not the independent act of the boy in slamming the door was reasonably fore-

seeable. We believe that, under the evidence, the jury was warranted in finding that it was."

To the same effect is *Stovall v. Toppenish School Dist. No. 49,* 110 Wash. 97, 188 Pac. 12, 9 A. L. R. 908. In that case, a steel tank was left on the school grounds for several days. While some of the boys were rolling that tank backward or forward, a child was pushed or fell from the tank and was injured. It was urged by the defendant school district that the act of pushing the child off the tank constituted an independent intervening cause which relieved the school district from its primary negligence and became the proximate cause of injury. We held that the result was a reasonably foreseeable one. We said:

"The fact that the respondent may have been pushed off the tank, if it be a fact, would not constitute an intervening agency between the original wrong and the injury. The intervention of a third person does not preclude a recovery, if the injury was the natural and probable result of the original wrong."

As the Gilpin car was parked at an angle, Mrs. Hardy's view of the extent to which the narrow passageway had been further reduced at the rear of the Gilpin car, as well as her entire view of the pedestrian, was obstructed by the illegally parked Gilpin car until collision and injury were imminent.

In *Ross v. Smith & Bloxom,* 107 Wash. 493, 182 Pac. 582, the defendant driver of an automobile testified, in an attempt to excuse his striking a pedestrian with his automobile, that defendant Smith & Bloxom improperly piled vegetable crates on the sidewalk near the point where the accident occurred to such a height as to hinder the view of the driver so that he was unable to see another vehicle approaching at right angles. The plaintiff was standing on the sidewalk conversing with friends. A Ford automobile, driven south on Western avenue, collided with an Overland automobile driven east on Madison street. In his effort to avoid collision, the operator of the Ford automobile ran across the southeast corner of the intersection onto the curb and struck the plaintiff pedestrian. It was argued that

Smith & Bloxom, as a matter of law, was not responsible because of severance of causal connection between the act of that defendant and the injury. We held that was a jury question and the rule of joint and concurrent negligence was applied.

 It was a question of fact for the determination of the jury whether but for the illegal parking of the Gilpin automobile the accident would not have occurred. It was for the jury to determine whether Gilpin, thus illegally parking his automobile, should have foreseen or reasonably anticipated that injury was apt to follow. The verdict reflects the finding of the jury that the act of Mrs. Hardy was simply a concurring cause; that, while the negligence of Mrs. Hardy was also a proximate cause, it merely combined or concurred with the continued effect of appellant Gilpin's negligence to produce the result, but did not supersede it.

*Bracy v. Lund,* 197 Wash. 188, 84 P. (2d) 670, on which appellant relies, is distinguishable on the facts from the case at bar. There the driver of a truck and trailer stopped on a bridge in violation of a city ordinance. Two cars coming from opposite directions collided while attempting to pass each other in the space twenty-three to twenty-four feet wide left free and open for passing cars by the driver who had negligently stopped on the bridge. Each could see the entire situation and condition when one thousand feet distant from each other. No surprise element was involved. We held that one so parking should not be expected reasonably to contemplate that two cars, approaching each other with full view for one thousand feet and having to their knowledge not less than twenty-three feet of unobstructed roadway upon which to drive, would succeed in colliding with each other while passing the parked vehicle.

The judgment is affirmed.

STEINERT, SIMPSON, and MALLERY, JJ., concur.