[No. 31993.    Department Two.    October 2, 1952.]

DANIEL DANIELSON *et al., Respondents,* v. THE PACIFIC TELEPHONE AND TELEGRAPH COMPANY, *Appellant.*[1]

[1]Reported in 248 P. (2d) 568.

*McMicken, Rupp & Schweppe, John N. Rupp,* and *Warren A. Doolittle,* for appellant.

*Robinson & Morse, Walter H. Robinson, John E. Morse,* and *Irwin C. Landerholm* (*Gordon A. Ramstead,* of counsel), for respondents.

HILL, J.—This action arose out of an automobile collision on the interstate bridge over the Columbia river between Vancouver, Washington, and Portland, Oregon. The principal issues presented are whether the appellant, The Pacific Telephone and Telegraph Company, was negligent in setting up and maintaining a traffic diversion system and, if so, whether that negligence was a proximate cause of the injuries sustained by the respondents.

The bridge crosses the Columbia river in a northerly and southerly direction, and has four marked lanes, two for northbound and two for southbound traffic. Separating the northbound and southbound traffic lanes are two yellow lines, each four inches in width with a four-inch unpainted strip between them. The two lanes of northbound ·traffic are separated by one four-inch yellow line, as are the two lanes of southbound traffic. In Vancouver, northbound traffic off the bridge can continue northerly on Washington street or turn right and go easterly on First street.

The day of the collision, May 4, 1950, and the preceding day, the telephone company was working in a manhole

located on the northeast corner of the intersection of Washington and First streets. The location of the manhole made it necessary to divert all northbound traffic in the east lane onto First street. After consultation with the traffic authorities of the city of Vancouver, a diversion system had been set up utilizing rubber cones to keep the east and west lanes of northbound traffic divided. These cones were eighteen inches tall, colored black, yellow and red, and had a base diameter of eleven inches and a top diameter of two inches. They were set about twenty-five feet apart on the yellow line dividing the east and west lanes of the northbound traffic. The line of cones extended back onto the bridge a distance of 570 feet from the manhole, according to testimony offered by the telephone company, and perhaps seventy-five feet less than that under the testimony offered by the respondents and defendant Robert Hoyt. South of the first cone and hanging over the east lane was a wooden sign twelve inches wide and eighteen inches high, reading "Right Turn Only."

Hoyt had traveled north across the bridge the day before the collision while the traffic diversion system was in effect. At that time he traveled in the east lane. On the day of the collision he was traveling in the west (or inside) lane. He testified that the cones were then in the same position as on the previous day. (Actually, they had been moved westerly a few inches, but that is not material.) Hoyt further testified that, on the day of the accident, the car traveling in front of him had pulled over from the west lane into the east lane and gone off the bridge onto First street when he, Hoyt, suddenly saw one of the cones (he insists it was the first, or most southerly, cone) in the middle of the lane in which he was traveling. He assumed from its location that all northbound traffic was being diverted to the east lane, and he applied his brakes. Then, to quote him, "it seemed like I hit an oily spot on the pavement which threw my car out of control head-on into the other motorist which caused the head-on collision."

The "other motorist" was Daniel Danielson, who, accom-

panied by Arnold Studier, was driving south across the bridge on the inside, or easterly, southbound lane. Both Danielson and Studier testified that they saw a northbound car veer slightly into their lane and then return to its proper lane, and then the next thing they knew there was a head-on collision.

One of the Vancouver police officers who investigated the collision testified that Hoyt told him at the hospital that

". . . he attempted to slow his vehicle down and he guessed his brakes grabbed on him and he skidded across the highway and he thought he should have got his brakes fixed."

Another witness testified that, immediately following the collision, Hoyt said, " 'Oh, I wish I would have got those brakes fixed.' "

Hoyt denied making the statements attributed to him by the two witnesses and testified that his brakes were in good condition.

Danielson and Studier sued both Hoyt and the telephone company, and Hoyt sued the telephone company. The jury returned a verdict for both Danielson and Studier against Hoyt and the telephone company, but denied Hoyt any recovery against the company. The telephone company is the sole appellant.

To support the verdict, the jury must have found that both Hoyt and the telephone company were negligent.

It is not contended that it was not necessary to divert the traffic, and the question presented is whether the method of traffic diversion met the test of ordinary and reasonable care under the circumstances and, if so, whether the telephone company properly maintained the diversion system.

Traffic experts for the city of Vancouver and for the state of Washington approved the use of the cones in the diversion system; the former suggested their use and the latter testified that "they are the only answer in this particular situation."

The appellant argues very persuasively that it was not negligent and that, if it was, any negligence of which it may have been guilty was not the proximate cause of the in-

juries sustained by the respondents. Appellant urges that it was inevitable that cones would be displaced and that the company could not guard against the inevitable; hence, the mere fact that a cone was displaced and was in the middle of Hoyt's lane of traffic did not prove negligence; that appellant would be negligent under such circumstances only in the event of an unreasonable delay in replacing the cone in its proper position and, since there was absolutely no evidence as to the period of time the cone had been in the position in which Hoyt says he saw it, negligence was not established.

The very basis of the argument—that it was inevitable that cones would be displaced and that they could not be replaced instantaneously—presents the reason that the jury was entitled to disagree with the experts as to whether the cones should have been used on the bridge, where a displaced cone would necessarily be in a lane of rapidly moving traffic. (In the eight and one-half hour period between 8:00 a. m. and 4:30 p. m. on a day comparable to May 4, 1950, 7,574 northbound cars traveled over the bridge. This collision occurred at approximately 2:20 p. m.) To replace a displaced cone knocked into the west lane of northbound traffic, the person assigned to that duty had to either dodge through or hold up traffic in the east lane so that he could get over into the west lane to retrieve and replace the cone.

While we, individually, may be convinced by the traffic experts that no negligence inhered in the use of the cones, the jury was not obligated to believe the experts and could have concluded that such cones, while generally very satisfactory, were not a proper diversion device on the bridge, where any displaced cone immediately became a traffic hazard, and that appellant was negligent in using them under the conditions then and there existing.

Taking the advice of experts does not ordinarily provide insulation against negligence. Due care can be inferred from the experts' approval of the method used, but such approval is ordinarily neither conclusive nor controlling on the issue of whether due care was used. *The*

*Germanic,* 196 U. S. 589, 49 L. Ed. 610, 25 S. Ct. 317 (1905);. *Harris v. Central Power Co.,* 109 Neb. 500, 191 N. W. 711 (1922); *Olena v. Standard Oil Co.,* 82 N. H. 408, 135 Atl. 27 (1926); *Neiss v. Burwen,* 287 Mass. 82, 191 N. E. 654 (1934); *Southern Pac. Co. v. City of Los Angeles,* 5 Cal. (2d) 545, 55 P. (2d) 847 (1936); *Maize v. Atlantic Refining Co.,* 352 Pa. 51, 41 A. (2d) 850, 160 A. L. R. 449 (1945). In the California case, *Southern Pac. Co. v. City of Los Angeles, supra,* which was an action for damages caused by the breaking of a municipal aqueduct, the supreme court of that state pointed out that the testimony of the city's experts that the aqueduct was constructed in accordance with standard engineering practice considering the known hazards, was only opinion evidence, which is not conclusive upon either a trial court or an appellate court.

    Coming suddenly upon a misplaced traffic cone in the middle of his lane of traffic, particularly the first cone he sees, might well be confusing to a driver; but appellant urges that it could not possibly foresee that a driver would, under such circumstances, plunge his car over into the southbound traffic lane and have a head-on collision with a car properly traveling in that lane.

Such an occurrence, whether caused by "grabby brakes," which the appellant has emphasized throughout, or by sheer panic or other cause, while not usual or expected, must be regarded as being within the ambit of reasonable foreseeability. In a situation involving a traffic hazard in one lane of traffic with rapidly moving traffic on either side, almost "anything can happen" and still be within the realm of what might be reasonably anticipated and foreseen, as we have explained those terms in our decisions. In fact, the preceding day, while the diversion system was in operation, a northbound car had gone over into the southbound traffic lanes but, fortunately, no collision had resulted. *Caylor v. B. C. Motor Transp.,* 191 Wash. 365, 71 P. (2d) 162 (1937); *Eckerson v. Ford's Prairie School Dist. No. 11,* 3 Wn. (2d) 475, 101 P. (2d) 345 (1940); *Berglund v. Spokane County,* 4 Wn. (2d) 309, 103 P. (2d) 355 (1940); *Swanson .v. Gilpin,* 25 Wn. (2d) 147, 169 P. (2d) 356 (1946); *Bronk v. Davenny,*

25 Wn. (2d) 443, 171 P. (2d) 237 (1946); *Theurer v. Condon,* 34 Wn. (2d) 448, 209 P. (2d) 311 (1949); *Muck v. Snohomish County PUD No. 1, ante* p. 81, 247 P. (2d) 233 (1952).

In addition to these decisions of our own, we would direct attention to a recent California case, *Gibson v. Garcia,* 96 Cal. App. (2d) 681, 216 P. (2d) 119 (1950). The Los Angeles Transit Lines maintained a pole " 'impaired by rot or termites' " which fell upon a pedestrian when it was hit by a car negligently driven by the defendant Garcia. To hit the pole, Garcia's car had to go over the curb. It was the contention of the transit lines that the weakened pole furnished only the condition upon which the unforeseeable intervening act of Garcia operated independently to cause the harm. A demurrer by the transit lines was sustained and the complaint was dismissed as against it. In reversing the dismissal by the superior court, the court of appeals said:

"Respondent appears to contend that it is absolved from liability since it was not foreseeable that a motorist would negligently collide with its pole with such force as to cause it to fall upon plaintiff. However, in order to prevent an intervening act from being a superseding cause which will relieve the defendant of responsibility for his negligence, the law does not inevitably require that the precise act be foreseeable. Numerous cases have declared that if the defendant's conduct exposes persons in the class to which plaintiff belongs to a foreseeable risk of injury, and his act or omission contributes substantially to injury of that nature actually occurring, he may be held liable notwithstanding the fact that an unforeseeable independent intervening act is a concurring cause."

The appellant quotes at some length from our opinion in *Crowley v. City of Raymond,* 198 Wash. 432, 88 P. (2d) 858 (1939). All of the quoted portion was *obiter,* as we expressly stated that it was not necessary to decide whether or not there had been an intervening and superseding act of negligence in that case.

Appellant also relies on *Bracy v. Lund,* 197 Wash. 188, 84 P. (2d) 670 (1938), and *Sitarek v. Montgomery,* 32 Wn.

(2d) 794, 203 P. (2d) 1062 (1949). The former is distinguishable on the basis fully stated in *Swanson v. Gilpin, supra*; and the latter is so unusual in its circumstances as to be practically *sui generis*.

■ We are of the opinion that the appellant's negligence was a question for the jury, and that it was likewise within the province of the jury to determine whether the negligence of Hoyt was superseding or concurring. The case was properly submitted to the jury and, while the jury might well have found for the appellant on either issue, we cannot see that the trial court erred in refusing to set aside the verdict. The judgment is affirmed.

SCHWELLENBACH, C. J., HAMLEY, and FINLEY, JJ., concur.

OLSON, J. (dissenting)—I am unable to agree that the appellant was negligent. It appears to me that the presence of the traffic cone was merely a condition. Further, I cannot agree that the negligence of Hoyt was not a superseding cause of this collision, or that the occurrence can be said to be one that was reasonably foreseeable by appellant.