ARNOLD *v.* THE OHIO GAS & ELECTRIC CO.

(Decided February 14, 1928.)

*Messrs. Vickery & Vickery* and *Mr. M. O. Burns,* for plaintiff in error.

*Mr. B. F. Harwitz* and *Mr. W. C. Shepherd,* for defendant in error.

MILLS, J.   Plaintiff in error, Harlan J. Arnold, brought an action against the defendant in error, the Ohio Gas & Electric Company, for personal injuries suffered by him, claimed to have been received through the negligence of the defendant company.

Defendant's answer denied negligence on the part of the defendant, and charged the plaintiff with contributory negligence.

At the close of plaintiff's case, the trial court, on motion of the defendant, directed a verdict in favor of the defendant. From the judgment entered on that verdict the plaintiff prosecutes error, claiming that the evidence introduced by him, tending to show negligence on the part of the defendant, was sufficient to require the submission of the question to the jury.

It appears from the record that the plaintiff, Arnold, a man about 25 years old, was working as a lineman for the Medina Telephone Company, in whose employ he had been for about four months; that he had never worked as an electrician; and that he knew nothing about electricity. At the time and place of the alleged injury, the telephone company and the defendant company were joint users of a pole located at a street intersection in the village of Medina.

The telephone company maintained on the pole a telephone cable and a messenger wire. This messenger wire was attached to the pole at a height of about twenty feet from the ground. It was a wire rope, which ran from pole to pole, carrying the telephone cable suspended beneath it. The telephone cable consisted of hollow lead tubing containing the telephone wires.

The defendant company maintained its electric light wires on the cross-arms of this pole about four feet above the telephone cable. These electric wires, which were of copper, and insulated, carried a lighting current of at least 100 volts.

On the day in question, the telephone company was engaged in shortening its lines by cutting out some excess cable and excess messenger wire, and

by splicing the remaining ends together. Arnold was one of the men employed in this work, and was under the supervision and direction of a foreman named Eddy, who was experienced in that kind of work.

The suspended telephone cable had been detached from its supporting messenger wire, and the messenger wire was being spliced at a point some three or four feet from the jointly used pole. In the course of the operation, the severed ends of the messenger wire were separately held in place by temporary guy wires, which were strung in opposite directions and attached to two poles—the pole jointly used and a shorter or "stub" pole some twenty or thirty feet away.

Three telephone company employees were occupied at this task of splicing. One of these three, a man named Weltmer, was on the jointly used pole. Eddy, the foreman, was on a ladder that was propped against the messenger wire about six feet distant from the pole. Arnold, the plaintiff, was working between the other two men. He was standing on the temporary guy wires, and was straddling the messenger wire. There was evidence tending to show that he was in that place by direction of Eddy, and that that was the place where it was necessary for him to be in order to do the work required of him. Suddenly Arnold, while in the position above described, received a violent electric shock, which made him unconscious and produced the burns and other bodily injuries complained of. He does not seem to remember, if indeed he ever knew, exactly what happened; but the other two men testified at the trial, giving their versions of the accident. It ap-

pears from their testimony that for some reason, which is unexplained, Arnold in the course of his work reached up his right hand and came into contact with one of the defendant's electric light wires.

There seems to be some doubt as to how the resulting circuit was completed; but the evidence tends to show that the electric light wire in question, if properly insulated, would not have injured the plaintiff; that there was an uninsulated or "bare" spot on the wire at a point within easy reach of the plaintiff; and that plaintiff received his injuries as the result of coming into contact with that bare spot. There is also evidence to warrant the inference that the insulation at the spot in question had been removed from the wire by employees of the defendant company for the purpose of tapping a connection, and that the defendant had either failed to cover the spot with insulation, or had improperly attached the insulating material.

Two of the specifications of negligence set forth in the petition were: (1) Defendant's failure to keep its electric light wires covered with insulation while maintaining them in a public street of a village; and (2) defendant's failure to keep its electric light wires covered with insulation in the proximity of the jointly used pole, being at a place where defendant had reason to know the danger to which it was exposing such employees of the telephone company as might be obliged to work on the telephone wires that were strung from that pole. We are of the opinion that both of the foregoing specifications of negligence were supported by sufficient evidence to take the case to the jury.

Under the rule laid down in *Cincinnati Gas & Elec-*

*tric Co.* v. *Archdeacon, Admr.*, 80 Ohio St., 27, 88 N. E., 125, the defendant here was charged with the same duty toward Arnold as toward its own employees; and Arnold owed to the defendant the duty of exercising due care for his own safety.

Bearing on both specifications of negligence, the court takes judicial notice of the fact that uninsulated wires charged with electric currents of high voltage are dangerous to life. The proffered evidence of the plaintiff in regard to this fact was rejected by the trial court, presumably because it was not in proper form.

Bearing on the first specification of negligence are the following provisions of Section 9195, General Code:

"A company organized for the purpose of supplying electricity for power purposes, and for lighting the streets and public and private buildings of a city or village, may manufacture, sell and furnish the electric light and power * * *, also construct lines for conducting electricity for power and light purposes through the streets * * *, by the erection of the necessary fixtures, including posts, piers and abutments necessary for the wires. All wires so erected and operated shall be covered with a waterproof insulation."

Covering with a waterproof insulation is therefore a requirement of the statute. In the case of *Chesrown* v. *Bevier*, 101 Ohio St., 282, 128 N. E., 94, the third paragraph of the syllabus reads:

"The violation of a statute passed for the protection of the public is negligence *per se.*"

The statute in question was clearly passed for the protection of the public.

The defendant's answer charged contributory negligence. We are of the opinion that the plaintiff's evidence raised no presumption of contributory negligence that he had failed to remove before the close of his case. *Baltimore & Ohio Rd. Co.* v. *Whitacre,* 35 Ohio St., 627; *Maddex* v. *Columber,* 114 Ohio St., 178, 151 N. E., 56. The trial court based its determination of this question upon the authority of *Gas Company* v. *Archdeacon, supra,* the second syllabus of which reads as follows:

"2. There can be no recovery against an employer for an injury to an employee which he would not have sustained if he had not voluntarily and unnecessarily used an appliance for a purpose other than that for which he knew it to be intended."

We find no evidence that Arnold voluntarily used this wire, or that he voluntarily even attempted to use it. From the opinion in the *Archdeacon case,* at page 41 (88 N. E., 128), we quote the following:

"However little he may have reflected upon the consequences which might result therefrom, he assumed that position purposely and unnecessarily. If his contact with the guy wire had resulted from accident, as by the giving way of a stirrup or other chance incident to the performance of his duty, important considerations, now absent, would have been introduced into the case."

There is evidence tending to show that the position of Arnold, while purposely taken, was necessary in the performance of his work. As far as the evidence discloses his contact with the bare spot on the electric wire may have been accidental. The witness Weltmer in his evidence states that Arnold "started to take a position, a braced position to pull on the

fish wire, and reached up to get a better hold to pull, and he accidentally got ahold of that untaped connection." Just what he was attempting to take hold of, to aid in the pulling, is not disclosed, but there is evidence tending to show that he reached back, and his little finger came into contact with the bare spot on the wire. So the jury might well infer that his coming into contact with the bare spot on the wire was accidental.

Defendant's answer raised the question whether plaintiff could maintain this action, since under the law he would be entitled to compensation under the Workmen's Compensation Act (Sections 1465-37 to 1465-108, General Code). Before we had come to a conclusion upon this question our Supreme Court decided the case of *Ohio Public Service Co.* v. *Sharkey, Admr.,* 117 Ohio St., 586, 160 N. E., 687, the syllabus of which laid down the rule that the fact that plaintiff, an employee of the telephone company, had received compensation for his injuries under the Workmen's Compensation Act, did not deprive him of the right to recover from the defendant such portion of his damages as had not been compensated under that act.

Our conclusion is that the trial court erred in instructing the verdict complained of; and, for that error, the judgment of the court of common pleas will be reversed and a new trial granted.

*Judgment reversed.*

HAMILTON, P. J., and CUSHING, J., concur.