[No. 29847. Department One. July 18, 1946.]

LOTTIE A. BRONK, *Individually and as Guardian Ad Litem, Respondent,* v. CY DAVENNY *et al., Appellants.*[1]

[1]Reported in 171 P. (2d) 237.

*Truscott & Bovingdon,* for appellants.

*Warren Hardy* and *Geo. Olson,* for respondent.

MALLERY, J.—The plaintiff, Lottie A. Bronk, suing in her individual capacity and as guardian *ad litem* for her two daughters, Dorothy Bronk and Irene Bronk, seeks recovery for damage to her real estate and personal property, caused by one of the defendants' tractors.

There is little conflict in the evidence. The facts which the jury were justified in believing are these:

Mrs. Bronk owns and occupies a dwelling house at 3920 Eleventh avenue west, in the city of Seattle. The defendants, Cy Davenny and Gordon Prentice, are copartners in the Davenny Equipment Company, a business devoted to the buying, reconditioning, and selling of tractors and other heavy equipment. Davenny Equipment Company occupies an area covering six lots at 1118 west Nickerson street, in the same city.

West Nickerson street runs in a general northwest and southeast direction, while Eleventh avenue west, which is thirty feet across, extends north and south. The defend-

ants' premises are located at the northwest corner of the intersection of Nickerson and Eleventh avenue west. One block north of Nickerson, and running parallel to it, is west Ewing street. The plaintiff's premises lie on the southeast corner of the intersection of west Ewing and Eleventh avenue west. An alley runs parallel to and midway between Nickerson and Ewing streets.

Situated upon the defendants' premises, which were unfenced, is an old wooden building, eighty feet wide and over one hundred feet long. This building was, at the time of the accident here in question, filled to capacity with tractors and other machinery in various stages of repair. Other pieces of equipment, upon which the reconditioning process had not yet begun, were parked in front of the building within two or three feet of the unpaved walk on the north side of Nickerson street and elsewhere upon the lot. Such was the condition of the defendants' premises when they or their servants locked up the building and left the place deserted early in the evening of Saturday, July 29, 1944.

At about 7:15 o'clock on that evening, four of the boys living in that neighborhood, Arthur Cady, age thirteen, Timothy Diffenbach, age ten, Larry Diffenbach, age eight, and Benny Lenhart, age six, met at the Diffenbach's house, where one of the boys suggested, "Let's go down and play on the tractors." All being agreeable, they immediately proceeded to the Davenny lot for that purpose. The Lenhart boy testified that, upon their arrival, "there was still some guy there, but he left about two minutes after we went there." Immediately after his departure, each boy chose a tractor, ascended to the driver's seat, and all were busy playing with the various controls when Timmy Diffenbach stepped on the starter button of his machine, which was standing at the southeast corner of the building. The result of this act was an answering roar from the engine, and an emission of black smoke from the exhaust stack. Having been left in low reverse gear, the tractor started backward. As soon as it commenced to move, Timmy jumped down to safety, and the rest of the boys, startled by the noise and smoke, likewise left their machines. They

remained in the vicinity long enough to watch the tractor charge through the wall of the defendants' building, strike and deflect off of one of the tractors within, and crash out through the east wall. At this stage of the proceedings, the boys fled.

The tractor, a caterpillar type Cletrac, model 95, proceeded down the hill in a northeasterly direction, crossed the alley, and crossed Eleventh avenue west. Somewhere along its course, its two-hundred-pound battery fell against one of the steering levers, causing the machine to describe a wide circle and to miss the plaintiff's house. The second time around, however, the tractor struck the house, plowed through and completely demolished one bedroom and knocked the whole structure out of plumb. Also destroyed were the plaintiff's sidewalk, garage, fence, cedar trees, and garden as well, and the furniture and clothing contained in the devastated bedroom. Ultimately, the tractor halted against a power pole long enough for a bystander to deactivate it by knocking off a gas line.

While there was nothing in the record to show that the defendants had knowledge of any child's previous attempt to start any of its machinery, there was abundant evidence to the effect that they were aware of frequent trespasses by children and had often chased them away. Mr. Davenny testified:

"Q. Did you ever see these boys start a tractor? A. No, sir; I did not. Q. Did you ever permit them to play around the tractors? A. Not if I caught them. They would run when they seen me. I used to chase them. Q. Why didn't you want them around? A. I was afraid they would get hurt. I like kids, but I ran them off for fear they would get hurt."

Mr. Bordeau, a mechanic employed by the defendants, upon cross-examination admitted:

"Q. Well, you have seen them get in the tractors? A. Yes, sir. Q. And playing around with them? A. Yes. Q. And you knew as a matter of fact they were in the habit of playing there when you boys were off duty? A. I had heard of them doing that when we were gone."

The tractor had been left by the defendants in reverse gear, a common practice in the securing of these machines. Although the defendants contended that the tractor in question had a cracked cylinder head and thus was not likely to start, it was admitted by Mr. Davenny that, in the previous month, the tractor had been started around a dozen times. It was further admitted that the ignition switch was shorted out, and that no key was necessary in order to close the circuit.

"Q. But that broken switch might have been in such a way the engine was turned on when it was left if the mechanic wasn't careful? A. (by Mr. Bordeau) That is one of the things we were going to fix. Q. And that was probably one of the reasons why this child was able to start the tractor? A. It could be. . . . Q. That is a caterpillar tractor, and when you get a second-hand tractor in, do they have a key, or are they crossed over? A. Most of them are just shorted out, and no key with them. Q. Explain to the jury. A. On most of these second-hand ones the switch had been broken, and the 'cat skinner' lost the key, and some have a key that pulls out like a car, and some they just have a switch you turn, and this particular one I think the switch was broken on it, and you had to choke it to stop it, or put it in gear and let the clutch in quick when it was idling and kill it."

Also admitted was the fact that the machine could have been rendered innocuous by the simple expedient of draining the gasoline tank or disconnecting a battery cable.

In her complaint, plaintiff has alleged negligence in that the defendants, who should have known that a tractor is attractive to children, left the tractor upon their premises, in gear, unlocked and unguarded, and so situated that the children could have access to it. Further allegations set forth the act of the children and the resulting damage. In her second and third causes of action, plaintiff, as guardian *ad litem* for her two daughters, sought damages for destruction of their personal effects. Defendants' demurrer was overruled, whereupon they filed an answer admitting that, on that date alleged, certain persons over whom they had no control intermeddled with their tractor, and denying

every other allegation of the complaint. Defendants' challenge to the sufficiency of the evidence was overruled.

At the close of all of the evidence, the parties by stipulation struck out the second cause of action, it appearing that the plaintiff's daughter Dorothy was not a minor. Defendants' motion for a directed verdict was denied, and upon verdict for the plaintiff, motion was made for judgment *non obstante veredicto* and for a new trial. These motions having been denied, defendants have appealed, assigning error upon the denial of their various motions, upon refusal of the court to charge the jury with certain of their requested instructions, and upon the giving of the court's instructions Nos. 5, 6, and 11.

In its instruction No. 4, the court defined the status of persons coming onto the premises of another. Instruction No. 5 continues:

"To an invitee, the owner of the property owes the duty of using reasonable care; to a licensee or trespasser, the property owner owes only the duty of not willfully or wantonly injuring him.

"The foregoing statement of the law, is subject to an exception, which is what is known as the attractive nuisance doctrine.

"There is no evidence of willful or wanton injury, and the plaintiff, to recover, must come within the attractive nuisance exception to the general rule. To do this she must prove by a preponderance of the evidence: 1. That the tractor was dangerous in itself and was likely to or probably would result in injury to those attracted by and coming in contact with it; 2. That it was attractive and alluring, or enticing to young children; 3. That the children were incapable, by reason of their youth, of comprehending the danger involved; 4. That the tractor must have been left unguarded and exposed at a place where children of tender years were accustomed to resort, or where it is reasonably to be expected that they will resort, for play or amusement, or for the gratification of youthful curiosity; 5. That it was reasonably practicable and feasible either to prevent access to the tractor, or else to render it innocuous, without obstructing any reasonable purpose or use for which it was intended.

"If the plaintiff has not established all five of the foregoing elements, your verdict must be for the defendants."

The pertinent part of instruction No. 6 is as follows:

"If you find by a preponderance of the evidence that the tractor in question was an attractive nuisance, as described in the foregoing instruction, then the basis of this action is negligence. The plaintiff is not entitled to recover merely because there has been an accident, but must prove by a preponderance of the evidence that the defendants sought to be charged were negligent in one or more of the particulars charged in the complaint; that the plaintiff suffered damages as charged, and that said defendants' negligence was the proximate cause of such damages."

By the provisions of instructions No. 11, the jury was charged:

"If you find that the plaintiff has established by a fair preponderance of the evidence: 1. The existence of all five elements of attractive nuisance as heretofore defined for you; 2. That the defendants are negligent; 3. That such negligence was a proximate cause of the damage sustained by the plaintiff, she would be entitled to recover on her first and third causes of action."

Instruction No. 7 stated:

"The law does not charge as negligence an act which may result in harm to another unless the consequences of the acts are such as could have been reasonably foreseen and guarded against. It is not the law that every accident establishes a cause of action warranting recovery by the injured party.

"If the defendants could not have reasonably foreseen or anticipated that some third persons would start the tractor which they had stored upon their own premises and allow it to go without control across the premises of the plaintiff, then they were not guilty of actionable negligence and your verdict should be for the defendants."

■ It was the appellants' position that negligence was without the issues of this case, that the only duty upon them was a duty owed to the children themselves not to wantonly or willfully injure them, and that the respondent's right could not rise above the right not to be wantonly and willfully injured. The appellants argue strenuously, as they did during the trial, that the attractive nuisance doctrine has no application here, since the doc-

trine was created solely to relieve minor children of the consequences of their own inquisitiveness and lack of judgment, providing a right of recovery in favor of injured minor children who would otherwise be barred by contributory negligence or because of the fact that they were trespassers upon the appellants' land. Further, it is argued that the doctrine has never been extended to property damage.

Even if we grant the correctness of the appellants' position on the scope of attractive nuisance cases generally, still we think that the instructions set out have made it sufficiently plain that the jury must find that the tractor was attractive to children before they were to pass upon the question of negligence, viz.: whether the act of an irresponsible child was one which should have been foreseen by a reasonable man in the appellants' situation. In other words, while the attractive nuisance doctrine, as limited to actions to recover for injuries to children, finds no application in this case, yet one element thereof, the element of a foreseeable attractiveness of a parked tractor to an errant child, and the appellants' failure to so secure the tractor as to prevent harm arising out of such attraction, is clearly the basis for a finding of primary negligence on the part of the appellants.

While, under the issues of the case, it was not necessary to instruct the jury upon the attractive nuisance doctrine in its entirety, the instructions complained of, read together with the remainder of the instructions, could not have misled the jury.

"They contained statement of an abstract proposition of law correct in itself. Statements of abstract principles of law, which are correct, are not prejudicial, when they do not mislead the jury." *Herndon v. Seattle,* 11 Wn. (2d) 88, 118 P. (2d) 421.

It is further contended by the appellants that the court below erred in not holding as a matter of law that the child's act, because he was capable of exercising discretion, was an independent, efficient, intervening cause which broke the chain of causation and exonerated them from liability.

The age of the child being in that middle ground in which the question cannot be resolved either way as a matter of law, it became a question for the jury.

■■ Appellants also argue that the child's act could not reasonably have been foreseen, and that it was error to submit to the jury the question of proximate cause.

In view of the surrounding circumstances as shown by the evidence, the act of the intermeddling child was not without the realm of reasonable expectability.

This court, in *Eckerson v. Ford's Prairie School Dist. No. 11*, 3 Wn. (2d) 475, 101 P. (2d) 345, and in *Berglund v. Spokane County*, 4 Wn. (2d) 309, 103 P. (2d) 355, has adopted the rule laid down in the Restatement of the Law of Torts 1202, § 449:

"If the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby."

Furthermore, "The question of reasonable expectability under the circumstances was one for the jury to decide." *Berglund v. Spokane County, supra.*

■■ Finally, the appellants urge that it was error to refuse their instructions Nos. 5 and 6. Instruction No. 5 was substantially covered in the court's instructions. Requested instruction No. 6 is not before this court for review, as appellants failed to take exception to its refusal.

The judgment is affirmed.

BEALS, C. J., MILLARD, STEINERT, and SIMPSON, JJ., concur.