[No. 32050. Department Two. August 14, 1952.]

ELEANOR C. MUCK, *Individually and as Administratrix, et al., Respondents,* v. SNOHOMISH COUNTY PUBLIC UTILITY DISTRICT No. 1, *Appellant.*[1]

[1]Reported in 247 P. (2d) 233.

*Skeel, McKelvy, Henke, Evenson & Uhlmann* and *Altha P. Curry,* for appellant.

*Hall, Cole & Lawrence* and *Stanley F. Atwood,* for respondent.

HILL, J.—This is an action in negligence, to recover for the wrongful death of a man electrocuted while assisting in the placing of a temporary, or test, television antenna. The caption is misleading. As submitted to the jury, this is an action by Eleanor C. Muck, as administratrix of the estate of Otto Max Muck, for the benefit of herself as the widow of the deceased and for the benefit of their minor son. From a judgment on the verdict of the jury in favor of the administratrix the defendant appeals, urging numerous reasons why it was entitled to a judgment of dismissal notwithstanding the verdict of the jury. There is therefore but one respondent, the administratrix.

The evidence most favorable to the respondent, so far as material to the questions raised on this appeal, was that Otto Max Muck was employed as sales manager of a retail electrical appliance store. The store was engaged in selling and servicing various household electrical appliances, radios, and television sets. Mr. Muck had general supervision of the retail sales division of the store and, as part of his job, bought stock, handled the advertising, including the window displays, and employed salesmen.

It was the practice of the store to allow prospective customers to try out television sets in their homes for a few days without obligation to purchase. This necessitated the setting up of a temporary, or test, antenna some twenty-five feet in height, which stood on the ground and was fastened to the side of the house. If a sale resulted, a permanent antenna was installed on the roof by another firm, which specialized in that work.

On the day he was killed, Mr. Muck accompanied Edward Olson, the service man employed by the store, whose duties included delivering television sets and setting up temporary antennas, to the home of Meinard Ulrich, where a console television set was to be left for demonstration purposes and a temporary antenna set up. Mr. Olson testified that the only reason Mr. Muck accompanied him was to assist in carrying the bulky television set into the house, and that if he, Olson, had been going to deliver and install a smaller, table-model television set, he would not have needed assistance. This was the second time Mr. Muck had accompanied him on such a mission.

A short distance from the Ulrich house, the delivery truck stalled. Mr. Muck stayed with the truck to get it started, and Mr. Olson went on to the Ulrich house with the portable temporary antenna, which consisted of five 5-foot sections of steel tubing that could be fitted together to make a 25-foot pole, together with the antenna proper, made up of a 4-foot beam and four or five 70-inch aluminum crossbeams. By the time Mr. Muck got the truck started and approached the house, Mr. Olson had assembled the antenna and had placed

a screw eye in the end of one of the house rafters, to be used to fasten the antenna to the house.

There was a wire fence very close to the house, and Mr. Olson had laid the 25-foot pole across this fence, the end of the pole which was to be on the ground being near the house and the end to which the aluminum crossbeams were to be attached projecting across the fence into a lane. To set the aluminum crossbeams in place, Mr. Olson crossed the fence into the lane. When he raised the antenna into a vertical position on the house side of the fence, he was still on the side of the fence away from the house. We will let him tell the story in his own words from that point:

"Well, I found that it was in sort of an awkward position to let go of the antenna, so I was figuring just what to do. At that time, I saw Mr. Muck coming. He was through with the truck and I saw him coming, and I said, 'Will you take hold of this pole while I go up on the ladder and tie it to the antenna?'

"He stepped over the fence while I held the pole; he stepped over the fence and said, 'I hope I don't tear my trousers.' That's what he said, and he took hold of the pole. I stepped about three or four steps further down the fence, which was lower at that point, and stepped over the fence and started to go over toward the ladder. At that time, I heard him make a sound and I noticed the antenna started to fall."

The antenna had come into contact with a 2400-volt primary line maintained by the appellant directly over the Ulrich house, and Mr. Muck had been electrocuted.

■ The appellant first urges that Mr. Muck came under the workmen's compensation act, as one who was engaged in extrahazardous employment in that he was engaged in ". . . installing . . . radios . . . and motor delivery, including drivers and helpers . . ." (RCW 51.12.010; cf. Rem. Supp. 1947, § 7674), and that his widow and minor child have no remedy except to avail themselves of their rights under that act. In reply to that contention, the respondent urges that our workmen's compensation act covers only enumerated extrahazardous occupations, that a television set is not a radio, and that, if the

installation of television sets is extrahazardous, it has not as yet been designated as such by the legislature.

However, we prefer to hold that, in any event, it has been determined by the verdict of the jury, under instructions of the court, that Mr. Muck was not engaged in duties required of him either by his contract of employment or by specific direction of his employer. The jury was justified in believing that it was not necessary for Mr. Olson to have any assistance in setting up a temporary antenna and that Mr. Muck accompanied him for the sole purpose of helping to carry the console television set into the house. The factual issues, being decided adversely to the appellant on substantial evidence, dispose of the contention that Mr. Muck was engaged in duties required by his contract of employment or by specific direction of his employer. *Cugini v. Department of Labor & Industries,* 31 Wn. (2d) 852, 199 P. (2d) 593 (1948), in which we cite and quote *D'Amico v. Conguista,* 24 Wn. (2d) 674, 167 P. (2d) 157 (1946); see, also, *Purinton v. Department of Labor & Industries,* 25 Wn. (2d) 364, 170 P. (2d) 656 (1946).

The present case is in many respects far stronger than *Cugini v. Department of Labor & Industries, supra.* There Cugini, the employer, was engaged in an extrahazardous business (logging and trucking) and the injured workman worked during the daytime as a log loader and boom man, and was acting as a watchman (or so it was contended and assumed for the purposes of the decision) at the time of his injury, which was caused by exploding dynamite which he was using for some purpose. The business of the employer and the occupation of the employee were both extrahazardous, yet we there held that, because the employee was not, at the time he was injured, in the actual performance of any duties required by his contract of employment, he was not covered by the act.

Here we have a business (a retail store handling electrical household appliances, radios and television sets) which is not classified as extrahazardous (although certain phases of it are so classified, such as the installation and servicing of radios, and motor delivery, including the duties

of drivers and helpers) and an employee whose occupation as sales manager is not defined as extrahazardous. The trial court correctly told the jury that, to sustain its defense that Mr. Muck came under the provisions of the workmen's compensation act, the appellant had to prove that Mr. Muck was engaged in the performance of extrahazardous employment required of him by his contract of employment or by specific direction of his employer.

An act of negligence by the appellant upon which the respondent relies to sustain the verdict was the maintenance of a high-tension line over the Ulrich house with a clearance of less than six feet, in violation of a rule promulgated by the public service commission of the state of Washington in 1914, pursuant to authority vested in it by law. Laws of 1913, chapter 130, p. 397; 3 Rem. & Bal. Code, §§ 4976-1 to 4976-6, inclusive (now Rem. Rev. Stat., §§ 5435 to 5440). (Authority to promulgate such rules is vested in the director of labor and industries by the Laws of 1921, chapter 7, § 80, p. 43. RCW 43.22.050; cf. Rem. Rev. Stat., § 10838. In the preparation of RCW, the revisers evidently were of the opinion that the Laws of 1913, chapter 130, as amended, had been superseded by the Laws of 1935, chapter 169, p. 574. RCW 19.28.010 to 19.28.350, inclusive; cf. Rem. Rev. Stat. (Sup.), §§ 8307-1 to 8307-18, inclusive. Whether the rule referred to is presently applicable is not material, as the case was tried by all parties on the assumption that the rule is still in effect.)

Appellant urges that the respondent cannot avail herself of the violation of the rule promulgated by the public service commission because the regulation is for the benefit of people working on houses and not for the benefit of those standing on the ground. Appellant cites no authority to support that argument, and the certified copy of the rule which is in evidence carries the finding that the adoption of the rule in question, together with others, was required by "the public security and public interest." The limitation which appellant seeks to place as to those for whose benefit the rule was adopted is without justification. Similar regu-

latory statutes are said to have been passed for the protection of the public. *Arnold v. Ohio Gas & Electric Co.*, 28 Ohio App. 434, 162 N. E. 765 (1928); *Tri-County Electric Cooperative v. Clair*, 217 S. W. (2d) (Tex. Civ. App.) 681 (1949). As said by Cardozo, J., in *Martin v. Herzog*, 228 N. Y. 164, 171, 126 N. E. 814 (1920):

"A statute designed for the protection of human life is not to be brushed aside as a form of words, its commands reduced to the level of cautions, and the duty to obey attenuated into an option to conform."

Certainly such a regulation is for the benefit of those working on and around the houses over which the high voltage wires are maintained.

■ Appellant then says that, if it was negligent, its negligence was not a proximate cause of Mr. Muck's death because, if there had been a 6-foot clearance as required by the rule referred to, the accident would still have happened. That theory was submitted to the jury by a proper instruction. The evidence shows that a 6-foot clearance would have placed the appellant's wire 27.55 feet above the ground, and that the atenna was twenty-five feet in height. The jury was entitled to conclude that if appellant's wire had conformed to the regulation there would have been no accident, and that its failure to conform to the regulation was a proximate cause of the death of Mr. Muck.

■ Appellant next urges that it is responsible for only such results of its negligence as could reasonably be anticipated, and that Mr. Muck's "swinging a 25-foot antenna in the air near the wires was something which was not reasonably anticipated." This theory, also, the trial judge submitted to the jury under an appropriate instruction. The concluding sentence of that instruction was:

"A condition reasonably to be apprehended or anticipated does not imply that the exact condition proven has to have been expressly contemplated, but only that the defendant should reasonably have apprehended that someone working on or around said house rightfully might come in contact with the wire and thereby suffer serious injury or death."

The principle there stated finds ample support in our opinion in *Card v. Wenatchee Valley Gas & Electric Co.,* 77 Wash. 564, 137 Pac. 1047 (1914), and the cases therein cited. In that case, a 20-foot length of pipe came in contact with a wire seventeen feet above the ground, with fatal results.

Appellant received all the consideration to which it was entitled on this point when its theory was submitted to the jury.

■ Appellant next urges that the negligence of Mr. Olson, who put the antenna together and asked Mr. Muck to hold it while he, Olson, climbed over the fence, was an intervening act of negligence which broke the chain of causation, and hence appellant's negligence was not the proximate cause. That defensive theory was not presented to the jury, nor was there any suggestion then nor is there now that it should have been. It does not appear from the record before us that appellant's counsel at any time suggested to the trial court that appellant was contending that Mr. Olson's negligence was a superseding negligence which broke the chain of causation. The case must be decided on the record made in the court below (*Lally v. Graves,* 188 Wash. 561, 63 P. (2d) 361 (1936)); and an appellant cannot seek a reversal here on a theory never presented to or considered by the trial court. *Smith v. King County,* 28 Wn. (2d) 917, 184 P. (2d) 562 (1947); *Stansbury v. Department of Labor & Industries,* 36 Wn. (2d) 330, 217 P. (2d) 785 (1950).

Parenthetically, we will say that the contention is patently without merit as the basis for judgment of dismissal notwithstanding the verdict, which is the only relief that appellant asks on this appeal, because the most that appellant could have asked was that its theory be submitted to the jury, and it was within the province of the jury to determine whether Mr. Olson was negligent and, if so, whether it was a superseding or merely a concurring negligence. *Eckerson v. Ford's Prairie School Dist. No. 11,* 3 Wn. (2d) 475, 101 P. (2d) 345 (1940); *Berglund v. Spokane County,* 4 Wn. (2d) 309, 103 P. (2d) 355 (1940); *Swanson v. Gilpin,*

25 Wn. (2d) 147, 169 P. (2d) 356 (1946); *Bronk v. Davenny,* 25 Wn. (2d) 443, 171 P. (2d) 237 (1946).

■ And finally, appellant urges that Mr. Muck was guilty of contributory negligence. The evidence was that Mr. Muck, in response to a request by Mr. Olson, grabbed hold of the antenna. There is no showing that Mr. Muck even knew that there were any wires overhead. Whether the wires, which could have been seen, should have been seen by him, and whether, having been seen, they should have been *indicia* of danger to a reasonably prudent and cautious man, were questions for the jury. The defense of contributory negligence was submitted to the jury under proper instructions, and that, again, was as much as the appellant was entitled to.

Every defensive theory suggested to the trial court was submitted to the jury with meticulous fairness and care. None of them presented questions of law which could have been determined adversely to the respondent. See *Tri-County Electric Cooperative v. Clair, supra,* a very recent decision (1949) which reviews a number of similar cases in which the questions of negligence, proximate cause, and contributory negligence were related to the height at which highly charged electric wires were maintained above the ground.

The judgment is affirmed.

SCHWELLENBACH, C. J., HAMLEY, FINLEY, and OLSON, JJ., concur.

---

October 1, 1952. Petition for rehearing denied.