202 So.2d 209 (1967)
Lorenzo Q. SIMON, As Natural Mother of Louis L. Calvo, Minor Deceased Child, Appellant,
v.
TAMPA ELECTRIC COMPANY, a Florida Corporation, Raul Bertran and Armonia Bertran, Appellees.
No. 67-237.
District Court of Appeal of Florida, Second District.
September 6, 1967.
Rehearing Denied October 2, 1967.
*210 Paul C. Huck, of Frates, Fay, Floyd & Pearson, Miami, and Joseph Garcia, Tampa, for appellant.
Lucius M. Dyal, Jr., of Shackleford, Farrior, Stallings & Evans, Tampa, for appellee Tampa Electric Co.
John Bush, of Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellees Raul and Armonia Bertran.
ALLEN, Acting Chief Judge.
Appellant, plaintiff below, has appealed a final order dismissing her complaint for failure to state a cause of action.
On the 30th day of September, 1965, plaintiff's decedent, pursuant to his employment with Pic's T.V. of Tampa, came upon the premises of Raul and Armonia Bertran to install a TV antenna.
The Bertrans, as purchasers of the antenna, requested that it be erected in the rear of their home. In compliance with *211 the request, the decedent and a fellow employee went to the designated area and proceeded with the installation. While the decedent was standing on the ground holding the antenna to place it in position, the top portion of the antenna came into contact with an energized electrical wire, maintained by appellee Tampa Electric Company, causing fatal injuries to decedent.
The sole question involved on this appeal is whether the complaint, as amended, states a cause of action against the appellees.
We note, as the Supreme Court stated in Connolly v. Sebeco, Inc., Fla. 1956, 89 So.2d 482, that:
"The purpose of a complaint is to advise the Court and the defendant of the nature of a cause of action asserted by the plaintiff. The function of a motion to dismiss a complaint is to raise as a question of law the sufficiency of the facts alleged to state a cause of action. For the purpose of passing upon a motion to dismiss the Court must assume all facts alleged in the complaint to be true. Consequently a motion to dismiss a complaint must be decided on questions of law and questions of law only."
In Russell v. Community Blood Bank, Inc., Fla.App. 1966, 185 So.2d 749, Judge Shannon, speaking for this court, said,
"* * * a defendant moving to dismiss a complaint is deemed, for the purpose of ruling on the motion, to have admitted all facts well pleaded in the complaint, as well as all reasonable inferences arising from those facts. * *"
Assuming all facts alleged in appellant's amended complaint to be true as well as all reasonable inferences arising therefrom, we cannot, as a matter of law, say that the complaint did not state a cause of action against appellee Tampa Electric Company. We feel, however, that based upon our decision in Quinnelly v. Southern Maid Syrup Company, Fla.App. 1964, 164 So.2d 240, the motion to dismiss must be affirmed as to the appellees Raul and Armonia Bertran.
The annotation in 69 A.L.R.2d 9, 15, (1960) states:
"While those engaged in generating and distributing electricity are held to a high degree of care for the protection of persons liable to come into contact with this dangerous and subtle force, it is well established that the liability of electric light and power companies for damages for personal injuries is governed, * * * as in the case of personal injuries generally, by the simple rules of negligence.
"An electric power company is clearly liable in damages for an injury proximately resulting from its failure to exercise the proper degree of care, to one to whom it owes the duty of such care. * * *"
The status of the law in this jurisdiction is expressed in the above annotation. In essence we adhered to the position there taken in the case of Ahearn v. Florida Power and Light Company, Fla.App. 1961, 129 So.2d 457, at page 461, wherein Judge Kanner, speaking for the court, said:
"The generation and distribution of electrical energy is highly dangerous to life and property. Electricity, the basic commodity of a power company, coursing invisibly through the quiet of uninsulated high tension wires, of itself sounds no warning as to its lethal nature. So it is, those who operate such a facility have the obligation to exercise care and vigilance in proportion to the peril involved."
Further in the Ahearn case, the opinion discusses two New York cases (pp. 462 and 463) as follows:
"In the Pike v. Consolidated Edison Co. case [303 N.Y. 1, 99 N.E.2d 885, 886], *212 plaintiff's decedent, employed as a steel worker by a construction company, was on a truck manually controlling a cable attached to the boom of a nearby crane and was electrocuted when the cable in his hands made contact with the defendant's high tension wires. The court of appeal held that the electric power company maintaining wires 34 feet above the ground knew that a building 19 feet and 11 inches tall was to be erected in the vicinity of the wires and held that the company was not entitled to actual notice of the time when the 80 foot crane would be operating there but was bound to ascertain when it was to be used so as `to protect workmen against the danger that was there hidden in its high tension wires  or so a jury could find * * *.' It was pointed out that the electric company, long before the accident, had received for its own use copies of officially approved plans for the construction in progress. The court, stating that under the evidence the use of an 80 foot boom on the occasion in question was not at all extraordinary, held that the company was not unaware of the common use of cranes and booms in the erection of buildings.
"In the Bennett case, [Bennett v. New York & Queens Electric Light & Power Co., 1945, 294 N.Y. 334, 62 N.E.2d 219, 220] the court reversed judgment for the defendant. Plaintiff's decedent was electrocuted when, in the course of excavation upon a sewer project, the boom of a crane moved close enough to a high voltage wire of the defendant to produce a short circuit. The boom of the crane was 40 feet long and the high tension wires were located 34 feet from the ground. The court held that a jury question was presented as to whether the decedent met his death by reason of defendant's failure to take those precautions dictated by the danger to which he was exposed, defendant having knowledge of conditions under which the work was being done. Said the court, `We cannot say as a matter of law, as has the Appellate Division, that upon the evidence of record before us the defendant was free from actionable fault. The standard of care required of one maintaining a dangerous agency must be commensurate with the risk therefrom reasonably to be foreseen. In the present case the vigilance required of the defendant depended upon the likelihood of danger to which those near its wires would be exposed by reason of the voltage of electricity which those wires carried. That voltage proved to be a death-bearing current which required of the defendant protective measures which, in existing circumstances, were proportioned to the danger which its transmission created.'"
It is a general rule of law that the negligence of an electric power company cannot be regarded as the proximate cause of an injury within the law of negligence unless, under all the circumstances, the injury might have been reasonably foreseen by a person of ordinary intelligence and prudence.
This rule was followed in Henderson v. Kansas Power & Light Co., 184 Kan. 691, 339 P.2d 702 (1959), when the appellate court reversed an action which sustained the defendant's demurrer to the plaintiff's evidence. The action was brought to recover for injuries received by the plaintiff when the arms of a TV antenna, which was being turned, came in contact with or close proximity to the defendant's wire.
The court rejected the contention that the defendant could not reasonably foresee or anticipate that a TV antenna would be installed in close proximity to its power line and high enough to come into contact with the charged wire. The court also noted that the wire encroached upon the property where the antenna had been installed, and that the erection of such antenna was a reasonable use of the property by the owner. The court concluded that whether the defendant was negligent in installing its wire was a question for the jury. It was also pointed out in the opinion that the test of *213 negligence vel non on the part of the defendant was not whether it should have anticipated the particular act from which the injury resulted, but whether it should have foreseen the probability that injury might result from any reasonable thing done on the owner's property by people who had a right to go there.
A similar result was reached in Muck v. Snohomish County Public Utility Dist. No. 1, 41 Wash.2d 81, 247 P.2d 233 (1952), where the decedent was electrocuted while holding a 25-foot metal pole intended for use as a TV antenna. The pole came in contact with a wire, which passed over a residence, with less than the 6-foot clearance required by statute. The power company contended that it should be responsible only for such results of its negligence as could reasonably be anticipated, and it was not reasonable to anticipate that somebody would be "swinging a 25-foot antenna in the air near the wires." The court rejected this contention, however, and pointed out that it was only necessary that the defendant should reasonably have anticipated that someone working on or around the house might come in contact with the wire.
We are not unmindful of the fact that the cases above referred to are distinguishable from the case sub judice in certain particulars. These cases, however, do present principles of law which are applicable to the situation in this appeal.
The elements necessary to establish a cause of action based upon negligence may be stated as follows:
"(1) A duty, or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks.
"(2) A failure on his part to conform to the standard required. * * *
"(3) A reasonable close causal connection between the conduct and the resulting injury. * * *
"(4) Actual loss or damage resulting to the interests of another. * * *" [Prosser on Torts, 3rd Ed., p. 146 (1964).]
We have seen that the simple rules of negligence apply to cases involving accidental death by electricity where negligence is alleged. We have also seen that due to the deadly nature of electricity there is a much higher degree of care required for the protection of those who might come in contact with it. With this in mind let us compare the allegations in the amended complaint with the elements necessary to state a cause of action in negligence to see whether, as a matter of law, appellant has failed to state a cause of action against the appellee Tampa Electric Company.
Paragraph 10 of the amended complaint provides:
"That prior to September 30, 1965, the Defendant TAMPA ELECTRIC COMPANY, a Florida corporation, had installed certain electrical transmission lines along the west side of an alleyway running north and south and located immediately to the rear of the aforementioned Bertran residence * * *; that said power lines were carelessly and negligently installed in that they were placed in too close proximity to the residential structure on the property * * * said wires being insufficiently insulated for such proximity and/or the Defendant, TAMPA ELECTRIC COMPANY, knew of the existence of said residential structure being only a few feet from said power lines and thereby carelessly and negligently created and/or allowed to exist a dangerous condition or trap; that the Defendant, TAMPA ELECTRIC COMPANY, knew of this dangerous condition for a sufficient period of time for a reasonable man to have corrected the same and yet the defendant power company being in exclusive control of and responsible for said power lines, carelessly and negligently failed *214 to take any corrective action but rather continued to carelessly and negligently maintain said line without even putting up any warnings to persons using said area."
It seems to us that from this paragraph we could infer that the appellee-Bertran residence was built at some point in time prior to the erection of the power lines by the Tampa Electric Company. If this be the case, then the Tampa Electric Company was under a duty to exercise a high degree of care and skill in the erection and maintenance of the power lines.
The law requires the electric companies to conform to this high degree of care in order to protect others against unnecessary risks. The duty having been established, we next inquire as to whether the Tampa Electric Company conformed to the degree of care required under the circumstances.
An allegation in Paragraph 10, which must be taken as true, states that the power lines were carelessly and negligently installed in that they were placed in too close proximity to the residential structure, and further, that the wires were insufficiently insulated for such proximity. Thus, appellant has inferred that the Tampa Electric Company has failed to exercise that degree of care which an ordinarily prudent person would have exercised under the circumstances.
We have already established that it is reasonable to foresee that someone might come upon the Bertran property to install a TV antenna. Henderson v. Kansas Power & Light Co., supra; Muck v. Snohomish County Public Utility Dist. No. 1, supra.
Part of the allegation in Paragraph 11 of the amended complaint states that the close proximity of the power lines to the Bertran's residence resulted in a trap or dangerous condition, which would result in antennas being brought into contact with the power company's power lines by those persons installing antennas onto said residence.
The complaint further alleges that decedent's death was caused by the contact between the antenna decedent was holding and the power line. This, in conjunction with the allegations in Paragraph 14(a) and (b):
"In stringing and hanging its electric wires and/or maintaining said wires only a few feet from the defendants RAUL BERTRAN and ARMONIA BERTRAN'S house, and in maintaining said wires in such a position and in such close proximity to said house as to be dangerous by reason of the electricity carried by said power lines;
"In maintaining its wires at and near the said house without having them properly insulated and in maintaining its wires at said place with the insulation worn off and/or insufficient for the circumstances and that deceased injuries were directly and proximately caused by the negligence of defendant power company in permitting a dangerous and excessive current of electricity to exist into such close proximity with said house;"
are sufficient to establish the close causal connection between the conduct required in the first element and the resulting injury.
The averment in Paragraph 3 stating that the TV antenna, while being installed by the deceased, was brought into contact with one or more of the high-tension electric overhead wires, thereby causing a fatal charge of electricity to pass through said antenna and through the deceased's body, causing his death, clearly establishes that appellant has suffered actual loss. Decedent left only appellant, his natural mother, surviving him, so there is no question as to the propriety of appellant's action.
The allegations and reasonable inferences arising from them in appellant's amended complaint sufficiently satisfy the elements necessary to state a cause of action in negligence. Appellant, however, must prove during the course of trial that Tampa *215 Electric Company was actually negligent. This opinion in no way passes upon the merits of this case. Whether appellant can and does prove negligence is a matter for a jury's determination. We merely conclude that as a matter of law appellant's amended complaint has apprised the Tampa Electric Company of the nature of the cause of action asserted by her.
The order granting appellees' motion to dismiss must, therefore, insofar as it relates to the appellee Tampa Electric Company, be reversed.
Affirmed in part and reversed in part.
SHANNON and PIERCE, JJ., concur.