KEETON, Appellant,

v.

TELEMEDIA COMPANY OF SOUTHERN OHIO et al., Appellees.

[Cite as *Keeton v. Telemedia Co. of S. Ohio* (1994), 98 Ohio App.3d 405.]

Court of Appeals of Ohio,
Scioto County.

No. 93CA2164.

Decided Nov. 4, 1994.

*Cloppert, Portman, Sauter, Latanick & Foley, Mark A. Foley* and *Nancy E. Leech,* for appellant.

*Wiles, Doucher, VanBuren & Boyle Co., L.P.A., David T. Patterson* and *Jumana E. Trad,* for appellee Telemedia Company of Southern Ohio.

STEPHENSON, Judge.

This is an appeal from a judgment entered by the Common Pleas Court of Scioto County directing a verdict pursuant to Civ.R. 50 in favor of Telemedia Company of Southern Ohio, defendant below and appellee herein, on the claims

brought against it by Charles Keeton II, plaintiff below and appellant herein.[1] The following error is assigned for our review:

"Where the plaintiff presents substantial competent evidence upon which reasonable minds may reach different conclusions regarding the liability of the defendant in a negligence action, it is within the province of the jury to determine whether the defendant was indeed liable for the failure to discharge a duty owed to the plaintiff."

The record reveals the following facts pertinent to this appeal. Appellant was hired by Century Cable Television during the summer of 1987 and was employed by that company as an installer. An installer was described as one who connects a line from a main feeder cable outside a home to the television set located therein so that cable TV signals can be received. On July 1, 1988, between 9:30 and 10 a.m., appellant climbed a pole located at the corner of Oak and Maple Streets in the Riggerish Addition in Sciotoville, Ohio, to facilitate such an installation from the cable strung at the top of said pole. While working, another cable strung at the top of the pole and owned by appellee came loose and struck him on the right side of the face and head, causing injury.

Appellant commenced the action below on April 7, 1992, alleging that appellee had negligently attached and secured its cable to the aforementioned pole and that such misfeasance had been the proximate cause of the cable breaking loose and striking him. Appellant further averred that he suffered numerous permanent injuries as a result of this incident, as well as great physical pain and emotional distress for which he was seeking compensatory damages. Appellee answered, denying all liability.

The matter was bifurcated and came on for jury trial on July 15, 1993, solely with respect to the issue of liability. At the conclusion of appellant's case in chief, appellee moved for a directed verdict. The lower court sustained the

---

1. This court was notified earlier in the year that appellant had died on February 20, 1994. Counsel informed us, at the time, that he was unaware of whether a personal representative had been appointed. Since then, there has been no motion filed for substitution of such personal representative. See App.R. 29(A). If there is no representative, then the proceedings shall be had as the court of appeals may direct. *Id.* The Ohio Supreme Court ruled in *State v. McGettrick* (1987), 31 Ohio St.3d 138, 31 OBR 296, 509 N.E.2d 378, paragraph two of the syllabus, that an appeal may be dismissed as moot when appellant dies while such appeal is pending and there has been no motion for substitution of parties filed within a reasonable time. This rule would not apply in the cause *sub judice.* The *McGettrick* case was specifically limited to criminal actions. *Id.* at 143, 31 OBR at 300, 509 N.E.2d at 382, fn. 7. Moreover, it was noted that a criminal defendant's death would "moot" many of the issues therein. *Id.* at 141, 31 OBR at 298, 509 N.E.2d at 381, fn. 4. A litigant's claim for personal injury, by contrast, survives his death. R.C. 2305.21. Thus, we direct that this appeal be continued and determined as if appellant was not deceased.

motion the following day and a judgment entry to that effect was filed.[2] This appeal followed.[3]

Our analysis begins by noting that a directed verdict may be granted by a trial court on the evidence pursuant to a properly made motion under Civ.R. 50(A). A motion for directed verdict requires the trial court to construe the evidence most strongly in the favor of the nonmoving party and the motion will not be granted unless reasonable minds could come to but one conclusion and that conclusion is adverse to the nonmoving party. See *Clark v. Southview Hosp. & Family Health Ctr.* (1994), 68 Ohio St.3d 435, 438, 628 N.E.2d 46, 48; *Wise v. Timmons* (1992), 64 Ohio St.3d 113, 116, 592 N.E.2d 840, 842; *Hawkins v. Ivy* (1977), 50 Ohio St.2d 114, 115, 4 O.O.3d 243, 243, 363 N.E.2d 367, 368. This requires that the trial court give the nonmoving party the benefit of all reasonable inferences that may be drawn from the evidence. See *Broz v. Winland* (1994), 68 Ohio St.3d 521, 526, 629 N.E.2d 395, 398. In ruling on a motion for directed verdict, the trial court must determine whether there exists any evidence of substantial and probative value to support the party's claim. See *Hargrove v.*

---

2. The provisions of Civ.R. 50(E) require that when a court directs a verdict it shall state the basis for its decision in writing. The lower court's judgment of July 16, 1993, directing a verdict in favor of appellee, stated no such basis for that decision. On July 23, 1993, appellant filed a motion requesting that the court state its reasoning for directing a verdict as required by Civ.R. 50(E). The lower court filed an entry on August 2, 1993, overruling the motion and denying the request for an explanation. Appellant has not raised this issue on appeal and, therefore, any error has been waived.

3. The lower court's judgment of July 16, 1993, directing a verdict in favor of appellee, was not the final appealable order in this case. See R.C. 2505.02. Therefore, the notice of appeal filed with respect to that judgment was improper. The record reveals that an amended complaint was filed in this action on September 3, 1992, naming a Chad A. Elliot as an additional defendant. The averments in the amended complaint were that Elliot had negligently precipitated an automobile accident with appellant that had aggravated the injuries he received back in 1988. Appellant then demanded compensatory damages against appellee and Elliot jointly and severally. On July 15, 1993, the parties stipulated to Elliot's liability, limited his total exposure for damages to $50,000 and specified that the issue of damages would go to trial at a later date. Therefore, the trial and directed verdict entered below were only on the claim asserted against appellee, Telemedia. The claim against Elliot had yet to be fully determined. This meant that, in the absence of the "no just reason for delay" language of Civ.R. 54(B), the judgment of directed verdict was neither final nor appealable. See, generally, *Chef Italiano Corp. v. Kent State Univ.* (1989), 44 Ohio St.3d 86, 541 N.E.2d 64. Nevertheless, on August 13, 1993, appellant filed his notice of appeal referencing that judgment. On August 24, 1993, an entry was filed announcing settlement with Elliot and dismissing all claims against him. The lower court correctly noted that this was the final order in the case. However, no further notice of appeal was filed. These procedural mishaps are, fortunately, not fatal to the appeal. The premature notice of appeal will be treated as if filed immediately after the final order. See App.R. 4(C); see, also, *Prod. Credit Assn. v. Hedges* (1993), 87 Ohio App.3d 207, 210, 621 N.E.2d 1360, 1362, at fn. 2; *Cole v. Cole* (Nov. 8, 1993), Scioto App. No. 93CA2146, unreported, at 4, 1993 WL 472883; *Blevins v. Blevins* (Nov. 1, 1991), Scioto App. No. 90CA1930, unreported, at 3, fn. 1, 1991 WL 238219.

*Tanner* (1990), 66 Ohio App.3d 693, 695, 586 N.E.2d 141, 141; *Fitzgerald v. Mayfield* (1990), 66 Ohio App.3d 298, 306, 584 N.E.2d 13, 18. This is a question of law rather than a question of fact, *Bentley v. Stewart* (1992), 71 Ohio App.3d 510, 512, 594 N.E.2d 1061, 1062; *Kobza v. Gen. Motors Corp.* (1989), 63 Ohio App.3d 742, 746, 580 N.E.2d 47, 49; *Baum v. Augenstein* (1983), 10 Ohio App.3d 106, 107, 10 OBR 129, 130, 460 N.E.2d 701, 703, as it tests the legal sufficiency of evidence rather than its weight or the credibility of witnesses. See *Jaworowski v. Med. Radiation Consultants* (1991), 71 Ohio App.3d 320, 333, 594 N.E.2d 9, 17; *First Fed. Sav. Bank v. WSB Invest., Inc.* (1990), 67 Ohio App.3d 277, 281, 586 N.E.2d 1159, 1161. Accordingly, an appellate court conducts its own independent review of the lower court's judgment of directed verdict. See *Mulford v. Cols. & S. Ohio Elec. Co.* (June 7, 1994), Athens App. No. 92CA1548, unreported, at 5, 1994 WL 251933. We now turn to applying these principles to the cause *sub judice.*

The evidence adduced below reveals that the pole on which appellant was working at the time he received his injuries is owned by GTE. The evidence also indicates that several other companies make use of that pole for stringing cables. Fred Strayer, outside plant engineering supervisor for GTE in Portsmouth, Ohio, testified that the pole in question had replaced another, smaller, pole in 1987 at the request of the Ohio Power Company which needed a larger structure. Strayer further testified that the other companies using the GTE poles were notified to transfer their cables to the new pole and, if such transfer was not made by a set time, GTE would transfer them and charge the other companies. Although the precise date that the new pole was installed is unknown, the work was completed by GTE sometime between August 30, 1987 and November 19, 1987. Formal written notice was sent to appellee both on November 19 and as part of a December 1987 "recap." Strayer conceded, however, that he had no idea when the transfer of appellee's cable to the new pole was made or who actually transferred it. The witness speculated that it was probably done by an independent contractor hired by GTE.

Appellant testified below and identified the cable which came loose and struck him in the head as being the one owned by appellee. Appellant was unable to state precisely how that cable had been attached to the pole just before the accident and, thereafter, the cable "dropped to about three [3] foot [*sic* ] off the ground." The evidence showed that appellant returned to the ground and called Century Cable for help. Bruce Harris, a technician with Century Cable, was nearby and came to his assistance. Harris testified that, before taking appellant to the hospital, he observed that appellee's cable "had come away from the pole" and that a "large metal staple" was still attached thereto. The witness further stated that he returned to the scene after taking appellant to the hospital in order

to make sure that the work begun had been completed. Harris observed that there had never been any "permanent" attachment of appellee's cable to the pole.

The uncontroverted evidence below was that the industry standard for attaching this sort of a cable to a pole is by use of a three-bolt clamp. The use of a large metal staple to accomplish such a task would not be within industry guidelines. This was even conceded by Wayne Harrison, a representative of appellee, who admitted that the use of a staple was not sufficient to make a permanent attachment. Nevertheless, Harrison stated that "[t]he use of a staple is a secure attachment."

Appellant argues in his assignment of error that this was sufficient competent evidence to survive a motion for directed verdict and have the issue of liability go to the jury. We agree. Liability for negligence in Ohio is predicated upon injury caused by the failure of the tortfeasor to discharge a duty owed to the injured party. *Fryberger v. Lake Cable Recreation Assn., Inc.* (1988), 40 Ohio St.3d 349, 351, 533 N.E.2d 738, 740; *Wills v. Frank Hoover Supply* (1986), 26 Ohio St.3d 186, 188, 26 OBR 160, 161, 497 N.E.2d 1118, 1120. Thus, the questions we must resolve in this case are (1) whether one cable company owes a duty of care to the employee of another cable company under the facts of this case and, if so, (2) was there sufficient evidence for the jury to determine if there had been a breach of that duty.

The first of these two questions is answered in the affirmative. Companies which make joint use of a wooden pole for purpose of carrying wires owe the same duty to the employees of the other company as they do to their own employees. *Cincinnati Gas & Elec. Co. v. Archdeacon* (1909), 80 Ohio St. 27, 39, 88 N.E. 125, 125. That duty is to exercise due care for the employees' safety. *Arnold v. Ohio Gas & Elec. Co.* (1928), 28 Ohio App. 434, 439, 162 N.E. 765, 766. There is little in the way of case law to define the parameters of that duty. Generally speaking, however, companies must exercise due or reasonable care in the maintenance and construction of lines, equipment and apparatus and will be liable for injuries proximately resulting from failure to use such care. See 88 Ohio Jurisprudence 3d (1989) 235, Telecommunications, Section 137; 86 Corpus Juris Secundum (1954) 60–61, Telephone, Telegraph, Radio and Television, Section 46. Companies also have a duty to make inspection for faulty equipment and will be liable for injury by faulty equipment which they allow to remain out of repair after reasonable notice. 74 American Jurisprudence 2d (1974) 354, Telecommunications, Section 41. These responsibilities are operative primarily with respect to the general public. However, the employees of one cable company deserve no less protection when they are working around the lines and equipment of another cable company making joint use of the same utility pole.

Having determined that appellee bore a particular duty of care toward appellant, it is now necessary to determine whether there was sufficient evidence adduced below for a reasonable jury to conclude that there had been a breach of that duty. We also answer this question in the affirmative. The testimony discussed previously indicates that appellant was struck in the head by a Telemedia cable, that the cable was attached to the GTE pole with a large metal staple and that that method of fastening the cable was not within industry guidelines. The use of a three-bolt clamp was the proper method to secure this sort of cable under pertinent industry standards. A jury could reasonable conclude from this evidence that, by allowing their cable to remain attached to the GTE pole by means other than those specified under industry guidelines, appellee breached its duty to use due care in the maintenance of its equipment.

Appellee counterargues that it could not be found to have breached its duty of care because there was no evidence introduced below to show that it was the party who transferred and attached its own cable in that manner. This is true. However, the jury could also consider whether appellee knew, or by the exercise of ordinary care should have known, that such an attachment was made and presented a potentially dangerous condition. See 88 Ohio Jurisprudence 3d, Telecommunications, *supra*, at Section 140. There was no evidence adduced below that appellee was notified of the actual transfer of its cable to the new pole. Nevertheless several notices were sent to notify appellee that GTE was installing a new pole and that its cable would have to be transferred. The installation of that pole was completed by November 1987 and notices were sent out that month and the following month. Making all reasonable inferences from this evidence, appellee could be found to have been put on notice that its cable would be transferred and attached to the new pole sometime during the eight-month period leading up to the time of appellant's accident. Appellee, as aforesaid, had a duty to maintain its equipment in proper order which includes an obligation to inspect for faulty equipment and to make repairs of those defects of which it had notice. A jury could reasonably conclude under the facts of this case that appellee breached its duty of due care by not anticipating transfer of the cable by a third party and checking at regular intervals to ensure that it had been done properly and posed no danger to employees or the general public.

Appellee also contends that there was no evidence introduced below to show that the notices sent by GTE were ever received. That may be the case. However, Strayer did testify that the notices were sent and this creates a prima facie presumption that they were duly received by the intended party. See *State ex rel. Ach v. Evans* (1914), 90 Ohio St. 243, 250, 107 N.E. 537, 539. That presumption may, obviously, be rebutted by testimony of appellee's agents or employees at trial. It is important to bear in mind that this case is before us on

review of a directed verdict and we are required to construe the evidence most strongly in favor of appellant. We are not commenting on the weight of the evidence or the merits of appellant's case, but ruling only that we cannot find that the only reasonable conclusion to be reached from this evidence would be adverse to his claim.[4]

For these reasons, appellant's assignment of error is well taken and sustained. The judgment of the lower court is reversed and this case is remanded for further proceedings.

*Judgment reversed*
*and cause remanded.*

GREY and PETER B. ABELE, JJ., concur.

---

4. Similarly, the Summit County Court of Appeals in *Ohio Bell Tel. Co. v. Corley* (App.1933), 13 Ohio Law Abs. 720, 722–723, found that, in absence of some explanation from the company, a jury could infer negligence in the maintenance and construction of a phone line merely by virtue of the hazardous condition it created and that the absence of notice to the company of that hazard did not require judgment to be entered in its favor.